UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA CAVALLARO AND MONIQUE HERMAN,<br>*on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL HOSPITALS, INC., UMASS MEMORIAL MEDICAL CENTER, INC., HEALTHALLIANCE HOSPITALS, INC., MARLBOROUGH HOSPITAL, THE CLINTON HOSPITAL ASSOCIATION, WING MEMORIAL HOSPITAL CORPORATION AND UMASS MEMORIAL HEALTHCARE 401K,<br><br>*Defendants.* | **FIRST AMENDED COMPLAINT- CLASS ACTION AND DEMAND FOR JURY TRIAL**<br><br>Civil Action No.<br>09-CV-40152-FDS |

**NATURE OF CLAIM**

1.     This is a proceeding for injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, Patricia Cavallaro and Monique Herman individually, as well as all other employees similarly situated ("Class Members") under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.*; and under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*

**JURISDICTION AND VENUE**

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover

damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; under 29 U.S.C. §216 (b); and under 18 U.S.C. § 1964(a) and (c).

3. Venue is appropriate in the District of Massachusetts since the allegations arose in this district and the Plaintiffs reside in this district.

## CLASS ACTION ALLEGATIONS

4. The claims arising under ERISA and RICO are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

5. The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

6. The class consists of current and former employees of defendants whose 401(k) plans were not credited with their non-reduced weekly wages and correct overtime compensation.  Additionally, the class consists of current and former employees of defendants who were injured by defendants' scheme to cheat employees out of their property and to convert the employees' property, including their wages and/or overtime pay, by misleading employees about their rights under the FLSA.

7. The class size is believed to be over 13,000 employees.

8. The Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class members and their claims are typical of, and concurrent to, the claims of the other Class Members.

9. There are no known conflicts of interest between the Plaintiffs and the other Class Members.

10. The class counsel, Dwyer & Collara, LLP. and Thomas & Solomon LLP, are

qualified and able to litigate the Plaintiffs' and Class Members' claims.

11. The class counsel practice in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under federal wage and hour laws.

12. Common questions of law and fact predominate in this action because the claims of all Plaintiffs and Class Members are based on whether defendants' policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation is a violation of ERISA or was part of a scheme to defraud Plaintiffs in violation of RICO.

13. The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the Plaintiffs seek injunctive relief, common questions of law and fact predominate among the Plaintiffs and Class Members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

**A. Defendants**

14. Collectively, defendants UMass Memorial Health Care, Inc., UMass Memorial Hospitals, Inc., UMass Memorial Medical Center, Inc., HealthAlliance Hospitals, Inc., Marlborough Hospital, The Clinton Hospital Association, Wing Memorial Hospital Corporation, and UMass Memorial Healthcare 401K (collectively, "Named Defendants") are related organizations through, for example, common membership, governing bodies, trustees and/or officers and benefit plans.

15. Together the Named Defendants are referred to as "UMass" or "defendants".

16. UMass is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium.

17. Defendants operate over 5 health care facilities and centers and employ approximately 13,000 individuals.

18. Defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a wide range of services.

19. For example, defendants have centralized data conversion systems, compliance programs, supply chain management, financial, computer, payroll and health records systems that are integrated throughout their locations.

20. Further, upon information and belief, defendants' labor relations and human resources are centrally organized and controlled, including defendants' employment of a Senior Vice President and Chief Human Resources Officer as part of the management team as well as the maintenance of system-wide policies and certain employee benefit plans.

21. Upon information and belief, defendants share common management, including oversight and management by an administration and Board of Trustees.

22. Upon information and belief, defendants have common ownership.

23. As such, defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other.

24. Upon information and belief, defendants maintain an ERISA plan known as the UMass Memorial Healthcare 401K.

**B.    Plaintiffs**

*Named Plaintiffs*

25. At all relevant times, Patricia Cavallaro and Monique Herman ("Plaintiffs") were employees under the FLSA, employed within this District and reside within this District.

*Class Members*

26.   The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked ("Class Members").

## FACTUAL BACKGROUND

27.   UMass is one of the largest health care providers in Massachusetts.

28.   As discussed below, defendants maintained several illegal pay policies that denied Plaintiffs and Class Members compensation for all hours worked, including applicable premium pay rates.

*Meal Break Deduction Policy*

29.   Pursuant to defendants' "Meal Break Deduction Policy," defendants computerized time-keeping system automatically deducts one half-hour from employees' paychecks each day for a meal break even though defendants fail to ensure that employees were relieved from duty for a meal break and employees did in fact perform work during those breaks and were not paid for that time.

30.   Defendants maintain the Meal Break Deduction Policy throughout its facilities and centers.

31.   Plaintiffs and Class Members allow defendants to operate on a 24/7 basis, and in doing so, Plaintiffs and Class Members often perform compensable work for defendants during their uncompensated meal breaks.

32.   Defendants do not prohibit Plaintiffs and Class Members from working during their meal breaks and do not have rules against such work.

33.   Although the defendants' policy deducts 30 minutes of pay each shift, defendants

expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently requires its employees to work during their unpaid meal breaks.

34. Plaintiffs and Class Members are not relieved by another employee when their break comes, or asked to leave their work location.

35. Plaintiffs and Class Members are expected to eat without any change in demands from patients or relief by additional staff.

36. Further, all defendants' employees are required to respond to pages whether on break or not, as well as requests by patients, co-workers and management.

37. Further, defendants for years have been reducing staffing which imposes larger and larger burdens on Plaintiffs and Class Members to immediately respond to the defendants' needs regardless of whether Plaintiffs and Class Members are on a "meal break."

38. Defendants know that Plaintiffs and Class Members perform work during their meal breaks.

39. For example, Plaintiffs and Class Members perform the work for the defendants, on defendants' premises, in plain sight, and at management's request.

40. Defendants' management have repeatedly observed Plaintiffs and Class Members working though their unpaid meal breaks. Defendants' management has gone so far as to direct Plaintiffs and Class Members to work during their unpaid meal breaks even though defendants' management knew that they would not be able to have a full meal break.

41. Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods and were not getting paid for such work.

42. When questioned by employees about the Meal Break Deduction Policy, the

defendants affirmatively stated that the employees could not be paid for such time, even though defendants knew such time was compensable.

43.     Further, given the demands of the health care industry and short staffing, defendants' management knew that to get the tasks done they assigned to Plaintiffs and Class Members, when they needed to get done, Plaintiffs and Class Members had to work through their meal breaks even during times they were not paid for their meal breaks.

44.     Even though defendants know its employees are performing such work, defendants fail to compensate their employees for such work.

45.     All Plaintiffs and Class Members are subject to the Meal Break Deduction Policy and are not fully compensated for work they perform during breaks, including, without limitation, hourly employees working at UMass' facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, food service hosts, registered nurses, licensed practical nurses, nurses aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, and other health care workers.

46.     Employees are entitled to compensation for all time they performed work for defendants, including during their meal breaks.

47.     In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent working during meal breaks often would includedwork that should have been calculated at applicable premium pay rates.

48.     All Plaintiffs and Class Members subject to the Meal Break Deduction Policy are members of Subclass 1.

*Unpaid Preliminary and Postliminary Work Policy*

49.     UMass suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shift and failed to ensure that employees were relieved from their duties before and/or after the end of their scheduled shift.

50.     However defendants failed to pay Plaintiffs and Class Members for all time spent performing such work as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Work Policy").

51.     In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent, performing work before and/or after their shifts often would have included work that should have been calculated at applicable premium pay rates.

52.     All Plaintiffs and Class Members subject to the Unpaid Preliminary and Postliminary Work Policy are members of Subclass 2.

*Unpaid Training Policy*

53.     Defendants also suffered or permitted Plaintiffs and Class Members to attend compensable training programs.

54.     However, defendants fail to pay employees for all time spent attending such training sessions (the "Unpaid Training Policy").

55.     In addition, if Plaintiffs' and Class Members hours had been properly calculated,

the time spent attending training often would have included work that should have been calculated at applicable premium pay rates.

56. All Plaintiffs and Class Members subject to the Unpaid Training Policy are members of Subclass 3.

57. Collectively, the Meal Break Deduction Policy, the Unpaid Preliminary and Postliminary Work Policy, and the Unpaid Training Policy are referred to herein as the "Unpaid Work Policies."

*Additional Allegations*

58. Plaintiffs and Class Members were subject to defendants' time keeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

59. Even though UMass knows its employees are performing such work, UMass fails to compensate its employees for such work

60. Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

61. Through the paystubs and payroll information it provided to employees, UMass deliberately concealed from its employees that they did not receive compensation for all the work they performed and misled them into believing they were being paid properly.

62. Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for all compensable time, even though Plaintiffs and Class Members were not receiving pay for all compensable time including applicable premium pay.

63. The defendants engaged in such conduct and made such statements to conceal

from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' federal rights.

64. As a result, employees were unaware of their claims.

65. This failure to pay overtime as required by the FLSA is willful.

66. Defendants, however, at all times intended to violate applicable federal laws by failing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked including applicable premium pay.

67. Among the relief sought, Plaintiffs and Class Members seek injunctive relief to prevent UMass from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

68. Defendants sponsor pension plans including the UMass Memorial Healthcare 401K (the "Plan") for its employees.

69. Plaintiffs and Class Members participated in the Plan as plan participants and beneficiaries pursuant to 29 U.S.C. § 1132(a)(1).(A)(3).

70. Defendants failed to keep accurate records of all time worked by Class Members. By failing to keep such records, defendants' records are legally insufficient to determine benefits.

71. Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits to the extent overtime may be included as compensation under the Plan.  Defendants, while acting as fiduciaries exercising discretion over the administration of the Plan, breached their duties to act prudently and solely in the interests of Plan's participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation

under than Plan, or to investigate whether such hours should be credited. Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants participation vesting and accrual of rights.

72. As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, any matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

73. Plaintiffs and Class Members allege that Defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs and Class Members out of their property and to convert Plaintiffs' and Class Members' property, including their wages and/or overtime pay (the "Scheme"). Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked in violation of federal law, as described previously in this Complaint.

74. Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs and Class Members. The Scheme involved depriving Plaintiffs and Class Members of their lawful entitlement to wages and overtime.

75. In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations. These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

76. The payroll checks were false and deceptive because they misled Plaintiffs and

Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA. Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries.

77. Defendants' predicate acts of mailing the misleading payroll checks in furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts. The relationship was reflected because the acts were connected to each other in furtherance of the Scheme. Continuity was reflected by both the repeated nature of the mailings during and in furtherance of the Scheme and the threat of similar acts occurring in the future. The threat was reflected by the continuing and ongoing nature of the acts.

78. Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiffs and Class Members for the economic benefit of defendants and members of the enterprise); results (retention of wages and overtime pay); participants (defendants and other members of the enterprise); victims (Plaintiffs and Class Members); and methods of commission (the Scheme and other acts described in the Complaint). The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

79. At all relevant times, in connection with the Scheme, defendants acted with malice, intent, knowledge, and in reckless disregard of Plaintiffs' and Class Members' rights.

80. Each of the Plaintiffs and Class Members is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

81. Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and

1962(c).

82. Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in or the activities of which affected interstate and foreign commerce.

83. Each defendant received income from a pattern of conduct unlawful under RICO, in which defendants participated through continuous instances of providing Plaintiffs and Class Members with misleading documents which defendants mailed and upon which Plaintiffs and Class Members relied to their detriment.

84. Plaintiffs and Class Members were injured in their business and property under 18 U.S.C. § 1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

85. Every wage payment that the defendants mailed to the Plaintiffs and Class Members as part of the Scheme constituted a new legal injury to the Plaintiffs and Class Members.

86. Therefore, each and every improper payment within the relevant statute of limitation period constitutes a new legal injury and the Plaintiffs and Class Members are entitled to recover based on the reduction in each improper payment.

87. Additionally, as set forth in the allegations above, including ¶¶ 92 and 111-114, the defendants fraudulently concealed from the Plaintiffs and Class Members the facts that are the basis for their claims. Further, such conduct by the defendants equitably tolls the statute of limitations covering Plaintiffs' and Class Members' claims.

88. Because of such conduct, the Plaintiffs and Class Members did not discover in the relevant statute of limitations period that the defendants were not paying them properly.

89. The Plaintiffs and Class Members exercised due diligence, but still were unaware of their rights.

90. The Plaintiffs and Class Members are not experts in proper payment under federal labor laws, and more specifically are not aware of what time is compensable for interrupted and missed meal breaks, nor how the defendants' internal computer systems were determining the amount they were being paid.

91. Further, when questioned, the defendants falsely assured Plaintiffs and Class Members that the defendants understood federal and state labor laws and that based on that knowledge, the defendants were ensuring that they were properly paying the Plaintiffs and Class Members.

92. The defendants made this representation despite the fact that such claims were false, fully knowing that Plaintiffs and Class Members were relying on the defendants' "expertise" and assurances.

93. Further, these assurances were not contradicted by the information in legal postings required by state or federal law to be displayed prominently at places of work to which Plaintiffs and Class Members had access.

94. Prior to seeking legal advice from Class Counsel, the Plaintiffs were never alerted to the defendants' concealment of its violation of the law by failing to pay the Class Members properly.

95. Further, not until the commencement of this action were Class Members made aware that the defendants' conduct in fact violated the law.

96. Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA.

## FIRST CAUSE OF ACTION
*FLSA*

97.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

98.     Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs and Class Members.

## SECOND CAUSE OF ACTION
*ERISA—Failure to Keep Accurate Records*

99.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

100.    Class Members bring these claims under 29 U.S.C. § 1132(a)(3), which confers on plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

101.    Defendants failed to keep accurate records of all time worked by Class Members. By failing to keep such records, defendants' records are legally insufficient to determine benefits. Defendants failed to keep records "sufficient to determine the benefits due or which may become due" under the terms of the Plan as required by ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

## THIRD CAUSE OF ACTION
*ERISA—Breach of Fiduciary Duty*

102.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

103.    Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

## FOURTH CAUSE OF ACTION
*RICO*

104.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated

herein.

105.   Plaintiffs and Class Members bring these claims under 18 U.S.C. § 1964(c), which confers on private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C. § 1962.

106.   Defendants' conduct, and the conduct of other members of the enterprise, injured Plaintiffs and Class Members by refusing to pay their regular or statutorily required rate of pay for all hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme to obtain Plaintiffs' and Class Members' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed.

**WHEREFORE**, Plaintiffs and Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award of the value of Plaintiffs' and Class Members unpaid wages, including fringe benefits;

(c)   liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to Plaintiffs and Class Members;

(d)   an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members rights;

(e)   an award of pre- and post-judgment interest; and

(f)   such other and further legal or equitable relief as this Court deems to be just and appropriate.

## **JURY DEMAND**

Plaintiff demands a jury to hear and decide all issues of fact.

Dated:  October 11, 2010

Respectfully submitted,
PATRICIA CAVALLARO et al.,
and all others similarly situated

By their attorneys,

s/ Patrick J. Solomon
THOMAS & SOLOMON LLP
Patrick J. Solomon, Esq. (*admitted pro hac vice*)
Michael J. Lingle, Esq. (*admitted pro hac vice*)
Justin M. Cordello, Esq. (*admitted pro hac vice*)
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
psolomon@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
jcordello@theemploymentattorneys.com

Jody L. Newman (BBO No. 542264)
Ariatna Villegas-Vazquez (BBO No. 655249)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA  02210-2211
(617) 371-1000
jnewman@dwyercollora.com
avillegas-vazquez@dwyercollora.com

## CERTIFICATE OF SERVICE

I, Patrick J. Solomon, hereby certify that on this 11th day of October, 2010, the foregoing Amended Complaint was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to the registered participants as identified on the Notice of electronic filing and also via first class mail to Plaintiffs' counsel of record:

Lisa A. Schreter
Angelo Spinola
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E.
Suite 1500 Atlanta, GA  30326
Phone: 404.233.0330
Fax: 404.233.2361
lschreter@littler.com
aspinola@littler.com

Gregory C. Keating (BBO # 564523)
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
gkeating@littler.com

/s/ Patrick J. Solomon
Patrick J. Solomon