## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PATRICIA CAVALLARO and MONIQUE HERMAN, on behalf of themselves and all other employees similarly situated,** ) ) ) ) ) | |
| **PLAINTIFFS,** ) | |
| **v.** ) | **Civil Action No.  4:09-cv-40152-FDS** |
| **UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL HOSPITALS, INC., UMASS MEMORIAL MEDICAL CENTER, INC., HEALTHALLIANCE HOSPITALS, INC., MARLBOROUGH HOSPITAL, THE CLINTON HOSPITAL ASSOCIATION, WING MEMORIAL HOSPITAL CORPORATION, AND UMASS MEMORIAL HEALTHCARE 401(K),** ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **DEFENDANTS.** | |

## DEFENDANTS'[1] MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST PLAINTIFFS' ERISA CAUSES OF ACTION

## I.    INTRODUCTION

Patricia Cavallaro and Monique Herman ("Plaintiffs") filed the present action on behalf of themselves and a putative class who allegedly "were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked."  First Amended Complaint-Class Action and Demand for Jury Trial (the "Amended Complaint" or "Am. Compl.") (Dkt. # 48) ¶ 26.  Plaintiffs assert four different causes of action, but each is based on an

---

[1] For purposes of this Motion, "Defendants" collectively refers to the following named defendants in the above-styled action:  UMass Memorial Health Care, Inc.; UMass Memorial Hospitals, Inc.; UMass Memorial Medical Center, Inc.; HealthAlliance Hospitals, Inc.; Marlborough Hospital; The Clinton Hospital Association; Wing Memorial Hospital Corporation, and UMass Memorial Health Care 401(K).

identical factual predicate: that Plaintiffs were allegedly not compensated for work they performed during meal breaks, before and after their scheduled work shifts, and while attending various training programs in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

Among Plaintiffs' four causes of action are two claims under the Employee Retirement Income Security Act ("ERISA") for alleged recordkeeping and fiduciary duty violations (Causes of Action II and III).   As discussed herein, these causes of action must be dismissed because they fail to state viable claims for relief.  An examination of Plaintiffs' Amended Complaint reveals the fatal flaws in their ERISA claims, including: (1) Plaintiffs assert an ERISA recordkeeping violation where no private cause of action exists as a matter of law; (2) Plaintiffs' ERISA claims challenge only the business practices of Defendants (failure to pay appropriate wages) and not the administration of a plan to which ERISA's recordkeeping and fiduciary standards apply; (3) Plaintiffs assert their ERISA claims under Section 502(a)(3) of ERISA which is not applicable; (4) although Plaintiffs attempt to disguise their claims as a request for injunctive relief, they are actually claims for ERISA benefits which must be dismissed for failure to exhaust administrative plan remedies; and (5) Plaintiffs' ERISA claims are not ripe for adjudication.

Defendants also move to dismiss Plaintiffs' ERISA claims based on Plaintiffs' failure to plead standing and employment relationships as to each named Defendant necessary to assert such claims.   In the interests of judicial economy and brevity, Defendants adopt and incorporate by reference the arguments and authority demonstrating Plaintiffs' failure to properly plead standing and employment relationships included in their Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings Against Plaintiffs' FLSA Cause of Action. (Doc. No. 52)

## II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiffs commenced this action on September 3, 2009.   *See* Complaint, Dkt. # 1 Plaintiffs originally named ten entities as defendants in this action, including seven

corporations, two individuals, and "UMass Memorial Healthcare 401K". *Id.* When Plaintiffs filed their Amended Complaint on October 11, 2010, Plaintiffs removed the two individual defendants, thereby naming a total of seven entities as the current named Defendants. *See* Am. Compl., Dkt. # 48. In their Amended Complaint, Plaintiffs do not specify which of these separate entities actually employed them, nor where they actually worked. *See generally* Am. Compl. Instead, Plaintiffs allege in vague and conclusory terms only that "they were employees under the FLSA" (*Id.* at ¶ 25), and "defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other." *Id.* at ¶ 23.

Plaintiffs assert four causes of action against Defendants, but Plaintiffs' Amended Complaint focuses on the overarching allegation that, in violation of the FLSA, Plaintiffs "were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked" during meal breaks, before and after their scheduled work shifts, and while attending various training programs. Am. Compl. ¶¶ 26, 28-96. Using the identical factual predicate forming the basis for their cause of action under the FLSA (*compare* Am. Compl. ¶¶ 68-71 *with* Am. Compl. ¶¶ 58-60), Plaintiffs attempt to bootstrap causes of action into the case for alleged violations of ERISA's recordkeeping provisions, set forth in ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1), and ERISA's fiduciary duty obligations, set forth in ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Am. Compl. ¶¶ 99-103. However, the core of Plaintiffs' Amended Complaint remains an alleged failure to properly pay Plaintiffs wages under the FLSA. *See, e.g.*, Compl. ¶ 6 ("The class consists of current and former employees of defendants whose 401(k) plans were not credited with their non-reduced weekly wages and correct overtime compensation.").

**A.      Plaintiffs' Fail To  Plead A Sufficient Nexus Between Themselves And The Various Legal Entities And Plans**

Plaintiffs identify only one ERISA-governed plan in their Amended Complaint: the UMass Memorial Health Care 401(k) Plan (the "Plan").[2]  Am. Compl. ¶ 68.  UMass Memorial Health Care, Inc. sponsors the Plan, in which employees of UMass Memorial Health Care, Inc. and various affiliated entities, including UMass Memorial Medical Center, Inc. but not all named Defendants, are eligible to participate according to its terms.  (A copy of the Plan is attached hereto as Exhibit A.)[3]  No other employer sponsors the Plan. Ex. A, p. 10, § 1.39.  Plaintiffs allude to multiple other unnamed "pension plans" in their Amended Complaint, but fail to identify any of those other "pension plans" by name.   Am. Compl. ¶ 68 ("Defendants sponsor pension plans including the UMass Memorial Healthcare 401K (the 'Plan') for its employees.").  Moreover, Plaintiffs do not specify which of the eight defendants they name allegedly owe legal duties to the UMass Memorial Health Care 401(k) Plan, let alone the other unidentified ERISA plans they implicate, or why those defendants who have such duties should be liable to them under ERISA.

**B.      No Duty Under The Plan To "Police" Contributions From Employers**

The UMass Memorial Health Care 401(k) Plan specifies that employer contributions will be made to the Plan based on an eligible participant's "Compensation," which is defined as the "total amount of base pay, overtime pay, shift differentials, annual incentive compensation ... *paid to the Employee by the Employer during the Plan Year...*," as well as a potential matching contribution based on the participant's contributions actually made to the Plan.  Ex. A, p. 2, § 1.8 (emphasis added); p. 23-

---

[2] Plaintiffs misname the Plan the "UMass Memorial Healthcare 401(k) Plan."

[3] A copy of the Plan is attached as Exhibit A hereto. Because the Plan is specifically referenced in, and does not contradict, Plaintiffs' Amended Complaint, it may be considered for purposes of Defendants' Motion. *See Edes v. Verizon Comm'ns*, 417 F. 3d 133, 137 n.4 (1st Cir. 2005) (holding in ERISA case that "where, as here, 'a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'"); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998) (considering ERISA plan when ruling on motion to dismiss and holding that "[w]hen, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (same).

25, §§ 5.1, 5.2.  The Plan *does not* provide that employer contributions will be made, or that benefits under the Plan will be calculated based on compensation that the participant *should have received*. Similarly, the Plan *does not* provide that contributions or benefits will be calculated using hours *actually worked* by participants.  Rather, the Plan provides that a participant will receive service hour credit for each hour where the participant *is directly or indirectly paid* for the performance of job duties.  Ex. A, p. 6, § 1.23.  Moreover, the Plan *expressly excludes service hour credit for back pay hours unless an award of back pay is actually made or agreed to by the participant's employer.  Id.*

Because the UMass Memorial Health Care 401(k) Plan calculates employer contributions based on "Compensation" expressly defined as *wages actually paid to the employee*, there is no duty under the Plan for any employer, plan sponsor or plan fiduciary to make contributions to the Plan based on amounts that *were not paid* to a participant, regardless of the reason.  Similarly, because the Plan defines service hours as hours for which a participant *was paid*, and *expressly excludes back pay not awarded or agreed to* from their definition of hours of service, there is no duty under the Plan for any employer, plan sponsor or plan fiduciary to make contributions to the Plan based on hours of work for which the participant *was not paid and for which back pay has not been awarded or agreed.*

III.   **ARGUMENT**

A.   **Applicable Legal Standard**

At any time after the pleadings close and "within such time as not to delay trial," a party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Fed. R. Civ. P. 12(c).  Judgment on the pleadings should be granted if the movant "is entitled to judgment as a matter of law."  *Burns Int'l Security Servs. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1994).  Rule 12(c) motions are analyzed under the standards applied to a motion to dismiss under Rule 12(b)(6).  *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 49 n.3 (1st Cir. 2009) ("The standard for evaluating a motion to dismiss is the same as that for a motion for judgment on the pleadings.").

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts as true factual allegations in the complaint.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163-65 (1993).  However, as the Supreme Court recently explained,

"[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (abandoning the "no set of facts" language of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) in favor of a "plausibility" standard) (quotations and citations omitted). Such "[f]actual allegations must be enough to raise a right of relief above the speculative level," and Plaintiffs must state "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1965, 1974.

### B. Plaintiffs' Fail To Plead A Sufficient Nexus Between Themselves And The Various Legal Entities And Plan

In their Amended Complaint, Plaintiffs do not specify which of the eight defendants they name allegedly owe legal duties to the Plan, or why those defendants with such duties should be liable under ERISA. As this Court recently recognized, relying on the recent decision in *Twombly*:

> to state a claim for benefits under an ERISA plan that is "plausible on its face," the plaintiffs must do more than allege that they are employees of the defendants. While participants in a plan are necessarily employees, it is not the case that employees are necessarily participants in a plan. ERISA does not require employers to establish plans at all, nor, if they do, to make the plans available to all. Consequently, *the plaintiffs must set forth sufficient factual allegations to make plausible a conclusion that they fall within the terms of a particular ERISA plan* and, thus, are entitled to seek to enforce those terms under § 1132(a)(1)(B).

*Curran v. FedEx Ground Package Sys.*, 593 F. Supp. 2d 341, 344 (D. Mass. 2009) (internal citations omitted)(emphasis added).

Here, Plaintiffs broadly assert ERISA claims against eight separate legal entities. However, Plaintiffs do not even attempt to set forth allegations upon which the Court could plausibly conclude that any defendant is a fiduciary or administrator of any ERISA-governed plan.[4] Plaintiffs offer no

---

[4] Further, it is clear that Plaintiffs have failed to adequately plead a claim for relief under ERISA as to the unnamed other pension plans implicitly referenced in Plaintiffs' Amended Complaint. *See* Am. Compl. ¶ 68 ("Defendants sponsor pension plans including the UMass Memorial Healthcare 401K (the 'Plan') for its employees."). It is axiomatic that, to maintain a claim for improperly denied benefits

allegations concerning which defendants (if any) sponsor the alleged plan(s) at issue, which defendants (if any) are charged with administering the alleged plan(s) at issue, or which defendants (if any) allegedly breached an ERISA-mandated duty.  Plaintiffs failure to allege any plausible facts on which the Court could conclude that any defendant owes a legal duty to Plaintiffs under ERISA makes Plaintiffs' claims subject to immediate dismissal.  *Id.*; *Twombly*, 127 S.Ct. at 1974.

### C.      Cause Of Action II, Alleging A Violation Of ERISA § 209(a)(1), Fails To State A Claim Upon Which Relief Can Be Granted

In Cause of Action II, Plaintiffs assert a claim for alleged violations of ERISA's recordkeeping provisions, set forth in ERISA § 209(a)(1).  Plaintiffs base this claim on Defendants' alleged failure to record uncompensated working time and use this time when calculating contributions to the Plan. Am. Compl. ¶¶ 99-101. According to Plaintiffs, "defendants' records are legally insufficient to determine benefits." Am. Compl. ¶ 70.

#### 1.      Cause Of Action II Fails As A Matter Of Law Because Plaintiffs Have No Private Right To Bring An ERISA Recordkeeping Claim

Cause of Action II of the Amended Complaint fails because ERISA § 209(a)(1) does not provide Plaintiffs a private cause of action.  ERISA § 209(a)(1) provides in relevant part:

> (a)(1) Except as provided by paragraph (2) every employer shall, in accordance with the regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.
>
> * * *
>
> (b) If any person who is required under subsection (a) of this section to furnish information or maintain records for any plan year fails to comply with such requirements, he shall ***pay to the Secretary a civil penalty of $10 for each employee with respect to whom such failure occurs***, unless it is shown that such failure is due to reasonable cause.

29 U.S.C. § 1059(a)(1); (b) (emphasis added).

---

under ERISA, a plaintiff must first allege facts confirming the existence of an ERISA-governed plan. *See, e.g.*, *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc); *Tevini v. CHC Int'l, Inc.*, 946 F. Supp. 985, 987 (S.D. Fla. 1996) ("To establish federal jurisdiction, the complaint must allege facts as will show the establishment or maintenance of a 'plan, fund or program' of the type covered by ERISA.").  Plaintiffs have alleged no such facts with regard to the unnamed "other" pension plans.

"Undeniably, [ERISA § 209(a)(1)] obligates an employer to maintain certain time records; it is also undeniable that [ERISA § 209(a)(1)] does not provide a private cause of action for affected employees." *Premick v. Dick's Sporting Goods, Inc.*, No. 02:06cv0530, 2007 WL 141913, at *6 (W.D. Pa., Jan. 18, 2007).[5] Accordingly, Cause of Action II of the Amended Complaint, which purports to state a claim under ERISA § 209(a)(1), should be dismissed.

2.    Defendants Were Not Acting As Plan Fiduciaries When They Engaged In The Conduct At Issue

Plaintiffs' assertion in Cause of Action II that various legal entities failed to keep accurate records due to an employment function – allegedly failing to record uncompensated working time – does not implicate ERISA's fiduciary functions in administering the plans.   "Under ERISA, a fiduciary is defined functionally: a party is a fiduciary 'to the extent' that he or she exercises discretion over the management of the plans or its funds or over its administration." *Livick v. Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008) (citing 29 U.S.C. § 1002(21)(A)); *see also Beddall*, 137 F. 3d at 18 ("fiduciary status is not an all or nothing proposition: the statutory language indicates that a person is a plan fiduciary only 'to the extent' that he possesses or exercises the requisite discretion and control."). Accordingly, "in cases alleging breach of ERISA fiduciary duty, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest...but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Livick*, 524 F.3d at 29 (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)); *see also Solis v. Plan Benefit Servs. Inc.*, 620 F. Supp. 2d 131, 143 (D. Mass. 2009) ("a person can be a fiduciary with respect to certain functions involving an ERISA plan, and not be a fiduciary with respect to other functions").

In the present case, Plaintiffs' ERISA recordkeeping claim fails because Defendants were not acting as Plan fiduciaries or performing a fiduciary function when they engaged in the conduct at

---

[5] *See also Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7, 38 (D.D.C. 2009) ("Section 209 of ERISA does not provide employees with a private right of action."); *Colin v. Marconi Commerce Systems Employees' Retirement Plan*, 335 F. Supp. 2d 590, 606 (M.D.N.C. 2004) (same); *Lowe's v. Telesat Cablevision, Inc.*, 837 F. Supp. 410, 412 (M.D. Fla. 1993) (same).

issue.  Plaintiffs are challenging an alleged non-fiduciary business determination by Defendants not to pay Plaintiffs for alleged uncompensated working time.  *See* Am. Compl. ¶¶ 26, 28, 58, 70.  Plaintiffs do not allege that Defendants *generally* failed to keep records in violation of ERISA § 209(a)(1).  Rather, Plaintiffs allege that the records Defendants do keep are *inaccurate* because they failed to record the alleged uncompensated working time.  *See* Am. Compl. ¶ 70 ("Defendants failed to keep *accurate* records of all time worked by Class Members.") (emphasis added).  While this business decision, as alleged by Plaintiffs, could have indirectly impacted the administration of the Plan at issue, Plaintiffs' artful pleading cannot morph their claim into something it is not: a claim challenging the administration of the Plan. Where, as here, Plaintiffs quarrel with a non-fiduciary business decision which may have impacted the records on which ERISA benefit determinations were made, rather than the maintenance of those records themselves, they fail to state a claim under ERISA and their cause of action must be dismissed.  *See, e.g.*, *Livick*, 524 F.3d at 29 (dismissing ERISA claim where plaintiff challenged the impact of non-fiduciary ministerial functions on the determination of plan benefits); On this point, the U.S. District Court for the Middle District of Florida's recent opinion in *Zipp v. World Mortgage Co.*, Case No. 6:08-cv-1638 (M.D. Fla. June 26, 2009) (attached hereto as Exhibit B), is instructive.  As in the present case, *Zipp* involved ERISA recordkeeping and breach of fiduciary duty claims.  Engaging in a comprehensive analysis of competing authority addressing "whether viable ERISA claims are stated where the underlying act at issue is the failure to pay overtime," the court concluded that "the decisions favoring the Defendants' position are the better reasoned," and dismissed both ERISA claims.  *Id.* at 5, 12.  In doing so, the District Court expressly noted that "with regard to the recordkeeping claim, Plaintiff Walker does not allege that Defendants failed to keep records as required by ERISA; he argues in essence that the records that *were* kept are *incorrect* due to the classification decision.  Again, that underlying decision is an employment decision, not an ERISA Plan decision."  *Id.* at 12-13.  In the present case, just as in *Zipp*, Plaintiffs are challenging an employment decision made by Defendants, not Defendants' administration of an ERISA plan.  As in *Zipp*, Plaintiffs' "ERISA [recordkeeping] claims are not legally cognizable" and "fail to state actionable claims."  *Id.*

**D.** **Cause Of Action III, Alleging Breach of Fiduciary Duty Under ERISA, Fails As A Matter Of Law Because There Is No Fiduciary Duty To "Police" Employers' Contributions To The Plans**

In Cause of Action III, Plaintiffs assert a claim for an alleged breach of ERISA's fiduciary duty obligations, set forth in ERISA § 404(a)(1). Am. Compl. ¶¶ 102-103. According to Plaintiffs, Defendants violated fiduciary duties under ERISA by failing to "police" their employer and make sure the employer was properly paying the Plaintiffs for all compensable working time so that, by default, Plaintiffs and the putative class would receive the correct contributions to their 401(k) plan accounts. Am. Compl. ¶ 71.

**1.** **No Breach Of Fiduciary Duties Exists Because Defendants Administered The Plan In Accordance With Its Express And Unambiguous Terms**

ERISA § 404(1)(D), 29 U.S.C. § 1104(1)(D), specifies that an ERISA fiduciary is required to discharge its duties "in accordance with the documents and instruments governing the plan[.]" "When ERISA plans contain unambiguous language, the Court construes them according to their 'plain and natural meaning.'" *Santana*, 12 F. Supp. 2d at 176 (citing *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1989)). Further, under the UMass Memorial Health Care 401(k) Plan, fiduciaries acting as administrators of the Plan have discretionary authority to enforce, construe, and apply the terms of the Plan. *See* Ex. A, p. 59-60, §§ 11.1, 11.2; p. 65, § 11.9. Accordingly, to the extent any of Defendants were acting as a fiduciary of the Plan, the defendant's decisions with regard to the administration of the Plan are not to be disturbed if they are reasonable, regardless of whether they are the best interpretation possible. *See Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1, 9 (1st Cir. 2009) ("where the plan documents delegate discretionary authority to the plan administrator (whether or not structurally conflicted), courts should review benefit-denial decisions for abuse of discretion"); *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002) ("In an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. ...it evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.").

As set forth above, the Plan defines "Compensation," a factor upon which employer

contributions are to be made on behalf of participants, to be *only wages actually paid to the employee*. *See* Ex. A, p. 2, § 1.8; p. 23-25, §§ 5.1, 5.2.  Accordingly, by the plain meaning of the Plan, there is no duty for any employer, plan sponsor or plan fiduciary to make contributions to the Plan based on amounts that *were not actually paid* to a participant.  Similarly, the Plan defines service hours as hours for which a participant *was paid*, and *expressly excludes back pay not awarded or agreed to* from their definition of hours of service.  Ex. A, p. 6, § 1.23.[6]  Thus, there is no duty under the Plan for any employer, plan sponsor or plan fiduciary to make contributions to the Plan based on hours of work for which the participant *was not paid.*

Once again, the District Court's opinion in *Zipp* is instructive.  Assessing a virtually identical breach of ERISA fiduciary duty claim, the Court found that "with regard to crediting compensation, the terms of the WISE Plan define compensation as 'amounts *paid* by an Employer to an Employee,' not amounts earned; thus, by crediting the Plan based on actual compensation paid—which is what Plaintiff Walker alleges Defendants did—Defendants were acting in accordance with the Plan terms."  Slip. op. at 13; *see also Maranda v. Group Health Plan, Inc.*, Case No. 07-4655 DSD/SRN, 2008 WL 2139584, at **1-2 (D. Minn. May 20, 2008) (dismissing fiduciary breach claim because the defendant "had no obligation to make contributions based on overtime hours for which plaintiffs received no compensation and was indeed following the terms of the Plan when it did not make such contributions").  The same is true in the present case: Defendant UMass Memorial Health Care, Inc. has administered the Plan according to its express terms.  Accordingly, Defendants have not

---

[6] The terms of the Plan defining "Hour of Service" state in full that an hour of service includes "[e]ach hour for which an Employee is directly or indirectly paid, or entitled to payment, for the performance of duties for the Employer or an Affiliated Employer during a plan year." Ex. A, p. 6, § 1.23(a). Plaintiffs' Amended Complaint asserts that Defendants did not pay Plaintiffs for the alleged hours of work in question. Defendants dispute Plaintiffs' entitlement to compensation for any such alleged hours of work. Thus, those alleged hours of work do not fall within the Plan's definition of "Hour of Service." Further, the fact that Plaintiffs have instituted a proceeding for back payment for the alleged hours of work makes it even more clear that the Plan does not require Defendants to credit Plaintiffs with hours of service for these disputed alleged unpaid work hours. The Plan makes it expressly clear that such "back pay hours" will not be considered hours of service unless the back pay "is either awarded or agreed to by the Employer or an Affiliated Employer." Ex. A, p. 6, § 1.23(c).

breached any fiduciary duties under ERISA and Count III of Plaintiffs' Complaint fails.

Nor can Plaintiffs escape this determination by asking the Court to expand the definitions of "Compensation" and "Hours of Service" found in the Plan to include the back pay to which they now claim they are entitled under the FLSA. The law does not allow Plaintiffs to substitute their judgment regarding an interpretation of the terms of the Plan in place of the reasonable interpretation of Defendants. *See Bremer v. Hartford Life & Accident Ins. Co.*, 16 F. Supp. 2d 1057, 1060 (D. Minn. 1997) ("As long as a reasonable explanation is offered by the Plan administrator, [its] decision should not be disturbed even if another reasonable, but different, interpretation may be made.") (citations omitted). Instead, the law requires Defendants to follow the unambiguous terms of the Plan, which is exactly what Defendant UMass Memorial Health Care, Inc. has done. *See* ERISA § 404(1)(D).[7]

### 2. Cause Of Action III Fails Because It Challenges An Employer's Business Decisions Not Subject To ERISA's Fiduciary Standards

Moreover, even if Plaintiffs could put forth a viable argument that one or more defendants, acting as plan fiduciary of the Plan, violated the terms of the Plan when failing to make contributions for uncompensated working time, Plaintiffs still fail to assert a legally cognizable claim under ERISA. According to Plaintiffs, unspecified defendants violated fiduciary duties under ERISA by failing to "police" their employer to make sure they were properly paying the Plaintiffs for all compensable working time. Am. Compl. ¶ 71. Plaintiffs do not claim that these fiduciaries made an error in calculation or misinterpreted the terms of an ERISA plan, instead, Plaintiffs quarrel with business decisions of their employers (i.e., not paying Plaintiffs' for the alleged uncompensated working time) which allegedly resulted in improper factors (i.e., a lower contribution level and a lower credited hours of service) being used *in otherwise proper plan administration.*

---

[7] Even assuming an arguable breach of fiduciary duty occurred (which it did not) and Plaintiffs did have a private right of action for their ERISA recordkeeping claim (which they do not), as shown in Section III(F) below, Plaintiffs' ERISA claims still fail because they are not ripe. The Plan expressly excludes back pay awards from Hours of Service unless and until a back pay award is paid or the employer agrees to such an award, and no such award has been paid or agreed to in this case.

Once again it is apparent that Plaintiffs are not challenging a fiduciary action under ERISA, instead, Plaintiffs are challenging a business decision by their employers not to pay them for overtime. In such cases courts have widely and wisely recognized that an employer's decision not to pay plaintiffs for overtime or alleged compensable working time is not subject to ERISA's fiduciary standards.  For example, in *LePage v. Blue Cross & Blue Shield of Minnesota*, Case No 08-584 (RHK/JSM), 2008 WL 2570815 (D. Minn. June 25, 2008), the court also examined ERISA claims stemming from alleged FLSA overtime violations.  Concluding the failure to pay overtime was not subject to ERISA's fiduciary standards, the District Court soundly reasoned that "[a]n employers' discretion in determining compensation is a business judgment which does not involve the administration of an ERISA plan or the investment of an ERISA plan's assets.  Such a decision may ultimately affect a plan indirectly, but it does not implicate fiduciary concerns regarding plan administration or assets notwithstanding the decision's collateral effect on prospective, contingent employee benefits." *Id.* at *5-6; *see also Ballaris v. Wacker Siltronic Corp.*, Case No. 00-1627, 2002 U.S. Dist. LEXIS 2746, at *2 (D. Or. Feb. 7, 2002) (employer's "decision concerning whether to pay wages for changing time has only an extremely indirect connection to the administration of the ERISA plan" and employer "was not acting as an ERISA fiduciary in this regard").

Moreover, in *LePage*, the District Court was cognizant of the fact that the plan at issue defined eligible earnings as compensation *actually paid* to a participant, not compensation that *should have been paid. Id.*   Thus, the Court held that the employer did not have a fiduciary duty to credit employees' 401(K) plans for overtime or wages that were not actually paid to the employees and there were no records to correct when it did not make contributions based upon overtime hours for which the plaintiffs received no compensation.  *Id.* The employer's decision not to pay Plaintiffs' overtime did not pertain to the administration of the 401(k) Plan; rather, it was a business decision to which ERISA's fiduciary standards did not apply regardless of whether it may have impacted plaintiffs' benefits under the plan. *Id.*  Consequently, "Plaintiffs have failed to state a legally cognizable claim with respect to the retirement plan at issue." *Id.*

The District Court's reasoning in *LePage* is directly applicable to Plaintiffs' claims. Plaintiffs challenge an alleged business decision not to pay them for uncompensated working time which does not pertain to the administration of the Plan. Thus, ERISA's fiduciary duty standards are inapplicable and Plaintiffs do not assert a valid claim under ERISA. Indeed, a flood of courts have expressly rejected identical ERISA claims asserted by Plaintiff's counsel on this very basis. *See Barrus v. Dick's Sporting Goods, Inc.*, 2010 U.S. Dist. LEXIS 79014, \*\*36-37 (W.D.N.Y. Aug. 5, 2010) ("[t]he Court determines that Plaintiffs' allegations fail to support a plausible claim that Defendants were acting as fiduciaries when they allegedly failed to report all hours of service. In determining the wage policy, Defendants were not acting as plan fiduciaries, and the Court finds unpersuasive the allegation that Defendants had a legal duty as ERISA fiduciaries to investigate crediting overtime pay."); *Kuznyetsov v. West Penn Allegheny Health Sys.*, 2010 U.S. Dist. LEXIS 12999, \*\* (W.D. Pa., Feb. 16, 2010) ("the plan documents in this case tie ERISA benefits to compensation paid and not to hours worked. Therefore, Defendants in our case, as in *Henderson*, *Camesi*, and *Mathews*, violated neither their recording nor fiduciary duties under ERISA because those obligations related to 'Compensation' that was paid, not hours allegedly worked by Plaintiffs but not paid.") Moreover, in *LePage*, the court recognized the devastating policy considerations implicated if Plaintiffs' logic were allowed to support the specious ERISA claims they assert, finding that "[s]uch a far-reaching duty would send the administration of the plan into gridlock and dramatically increase the cost of administering the plan. The Supreme Court has repeatedly warned that Congress did not intend that ERISA be 'a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering...benefit plans in the first place.'" 2008 WL 2570815 at \*7 (internal citations omitted).

Similarly, if this Court were to accept Plaintiffs' logic that a plan fiduciary's failure to police plan sponsors to ensure that plan participants did not have any claim to additional compensation could subject the fiduciary to legal liability for improper plan contributions, administration of the Plan would be sent into a tailspin. As the Plan sponsor, UMass Memorial Health Care, Inc., on behalf of the Plan, would have to employ an army of lawyers equal or larger in size to the current payroll departments of the participating entities to conduct constant audits of an employer's compensation practices and

payroll determinations to ensure that no participant could challenge them.  Failure to do so would result in massive potential liability and prohibitive legal costs.  In other words, the costs of administering the Plan would far exceed its benefits, and UMass Memorial Health Care, Inc. would have absolutely no incentive to maintain the Plan.  As the District Court noted in *LePage*, such a result is fundamentally at odds with ERISA, which further exposes the fact that Plaintiffs' claims are not legally cognizable under ERISA.  *Id.*; *see also Steavens v. Electronic Data Sys. Corp.*, 2008 WL 3540070, at **4-5 (E.D. Mich. Aug. 12, 2008) (same).

     **E.**      **Plaintiffs' ERISA Claims Should Be Dismissed With Prejudice Because Plaintiffs Cannot Bring Denial Of Benefit Claims Under ERISA § 502(a)(3) And Plaintiffs Failed To Exhaust Administrative Remedies**

          **1.**      ERISA § 502(a)(3) Does Not Provide A Right To Relief For The Violations Of ERISA Alleged By Plaintiffs

Plaintiffs' impermissibly seek benefits as damages in Causes of Action II and III through ERISA § 502(a)(3), ERISA's injunctive enforcement mechanism, which is not available here. Accordingly, Causes of Action II and III should be dismissed with prejudice.

"The six carefully integrated civil enforcement provisions found in section 502(a) of [ERISA] provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985).  ERISA's civil enforcement provisions are "carefully integrated" because they provide different causes of action based on the nature of relief sought.  Claims for benefits under ERISA are governed by 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502(a)(1)(B)"), permitting a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  In contrast, ERISA § 502(a)(3) – ERISA's "catch-all" equitable provision – provides in relevant part that a civil action may be brought:

     (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The relief available under ERISA § 502(a)(3), however, is extremely limited. *See generally,* *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). "Money damages..., the classic form of legal relief" is not available under the catch-all provision. *Mertens*, 508 U.S. at 255; *Great-West*, 534 U.S. at 210. Accordingly, the Supreme Court has opined that equitable relief under ERISA § 502(a)(3) is only "appropriate" if there is no remedy under ERISA's other civil enforcement provisions. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief in which case such relief normally would not be 'appropriate.'"); *Tuohig v. Principal Ins. Group*, 134 F. Supp. 2d 148, 151 (D. Mass. 2001) (same).

Here, to redress their alleged ERISA recordkeeping violation in Cause of Action II, Plaintiffs purport to seek injunctive relief under ERISA § 502(a)(3) "to enjoin any violation of ERISA § 1059(a)(1)." Am. Compl. ¶ 100. However, nowhere in their Amended Complaint do Plaintiffs explain why injunctive relief is appropriate to redress this alleged ERISA violation, nor do they explain the nature of the injunctive relief they seek. Even further, Cause of Action III in the Amended Complaint, raising a claim for breach of ERISA's fiduciary standards, does not specify *at all* under which enforcement mechanism of ERISA Plaintiffs purport to bring their claim.

Contrary to Plaintiffs' assertions otherwise, Plaintiffs' prayer for relief makes it plain that for both ERISA causes of action Plaintiffs are seeking recovery of "an award of the value of Plaintiffs' and Class Members [sic] unpaid wages, *including fringe benefits.*" Am. Compl., ¶ "WHEREFORE," p. 16 (emphasis added); *see also* Am. Compl. ¶ 6 ("The class consists of current and former employees of defendants whose 401(k) plans were not credited with their non-reduced weekly wages and correct overtime compensation."). Courts examining causes of action virtually identical to those asserted by Plaintiffs have reached a similar conclusion. *See, e.g., Premick,* 2007 WL 14191 at *6 ("Upon close examination of the Complaint, it is clear that in Count III [alleging violation of ERISA § 209(a)(1)] Premick is asserting a claim for benefits he claims to be owed because his 401(k) account was allegedly shorted as a result of Dick's failure to pay him certain

amounts of overtime to which he contends entitlement.").

The injunctive relief provided for in ERISA § 502(a)(3) is not available for a claim for benefits under ERISA. *See Varity Corp.*, 516 U.S. at 515; *accord Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1005 (8th Cir. 1996) ("Because Wald is provided adequate relief by her right to bring a claim for benefits under section 502(a)(1)(B), . . . she does not have a cause of action under section 502(a)(3)."); *Premick*, 2007 WL 141913 at *6 ("[A] claim for benefits can only be brought under [ERISA § 503(a)(1)(B)] and is not a claim for injunctive relief, but rather one for damages.") (citations omitted). Because Plaintiffs are impermissibly seeking to enforce a claim for plan benefits through the wrong ERISA enforcement mechanism, Causes of Action II and III should be dismissed. *See Watson v. Deaconess Waltham Hosp.*, 141 F. Supp. 2d 145, 150 (D. Mass. 2001) ("Deaconess correctly asserts that Watson's use of the work "enjoin" in his prayer for relief cannot transform an action for money damages into an equitable proceeding.").

Any argument by Plaintiffs that they are not, in actuality, seeking damages for benefits to which they are allegedly entitled is belied by the very fact that they seek to represent a large class of individuals who would not benefit from injunctive relief. As noted by this very Court only a short while ago, plaintiffs who seek to represent individuals in a class proceeding to redress alleged violations of ERISA would be ill-served by proceeding under ERISA § 502(a)(3), which provides only for equitable relief. *See generally, Mogel v. Unum Life Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 74220 (D. Mass. Aug. 19, 2009). As stated by the Court:

> ...it is unclear how the class members, defined as those beneficiaries who were *paid* benefits through Security Account, would benefit at all from the injunctive relief sought. Although they have suffered harm in the past from UNUM's alleged violations of ERISA, the only individuals likely to face further harm from UNUM's practices are those who, coincidentally, are the beneficiary of another UNUM policy. ...under the framework for weighing predominance followed by other circuits, it is clear that Plaintiffs' "primary objective" is monetary relief. ...absent the prospect of monetary recovery, the named plaintiffs and class members have no incentive to pursue their claims.

*Id.* at **14-16. In the present case, just as in *Mogel*, Plaintiffs seek to represent a class of more than 13,000 individuals comprised of "current *and former* employees" of Defendant over a multi-year

limitations period.  Am. Compl. ¶ 6-7 (emphasis added).  For the large number of individuals within Plaintiff's broad putative class who no longer are employed with Defendant and no longer receiving employer contributions to their accounts in the plans at issue, injunctive relief would provide them no relief at all.  *This includes Plaintiff Cavallaro herself, who is no longer an employee of Defendant.*  Surely Plaintiffs and their counsel are not willing to exclude this large portion of the putative class, including Plaintiff Cavallaro, from any recovery for their alleged violations of ERISA.  Accordingly, in any light, Plaintiffs' ERISA causes of action seek recovery of plan benefits and their claims are inappropriately brought under ERISA § 502(a)(3).

2.   Plaintiffs Failed To Exhaust Administrative Remedies

In accordance with the provisions of 29 U.S.C. § 1133(2), the UMass Memorial Health Care 401(k) Plan provides an extensive review procedure for participants to use when they believe that they have improperly been denied Plan benefits. *See* Ex. A, p. 60-62, § 11.4.  Plaintiffs have not alleged that they complied with these claims procedures, nor have they alleged that complying with these claims procedures would be futile.  Having failed to exhaust their administrative remedies, Plaintiffs cannot state a claim for benefits under ERISA § 503(a)(1)(b).  *See Drinkwater v. Met. Life Ins. Co.*, 846 F.2d 821, 825-26 (1st Cir. 1988) (dismissing ERISA benefits claim for failure to exhaust administrative remedies and noting exhaustion doctrine would be "rendered meaningless" if plaintiffs were allowed to bypass exhaustion by artfully dressing benefit claims in breach of fiduciary duty language); *Santana v. John Hancock Mut. Life Ins. Co.*, 12 F. Supp. 2d 162 (D. Mass. 1998) ("This Court agrees...that strong public policy reasons—most prominently to render meaningful the Congressional mandate that all ERISA plans include an appeal process—compel plaintiffs to exhaust all benefit denial claims, regardless of their nature.").  Further, any attempt by Plaintiffs to amend their Amended Complaint to state a claim under ERISA § 502(a)(1)(B) would be futile as a matter of law.  Plaintiffs' claims would be subject to immediate dismissal for failure to exhaust administrative remedies.  Accordingly, dismissal of Causes of Action II and III should be with prejudice.

**F.      Even if Plaintiffs Could Assert A Cause Of Action Under ERISA, Their Claims Still Fail As A Matter Of Law Because They Are Not Ripe**

Even assuming Plaintiffs could state a claim for violation of ERISA, Causes of Action II and III should nevertheless be dismissed because they are not ripe. The Secretary of Labor has promulgated regulations defining how plan administrators should calculate hours of work for purposes of ERISA in instances where, as here, plan participants seek back pay from their employers: "[a]n hour of service is each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the employer" 29 C.F.R. § 2530.200b-2(a)(3) (emphasis supplied). Similarly, *by its express terms* the Plan expressly excludes back pay hours from the plan's definition of "Hours of Service" unless the participant (1) actually receives an award of back pay or (2) the participant's employer agrees to the award of back pay. Ex. A, p. 6, § 1.23. Then – and only then – will these alleged "off-the-clock" hours of work constitute "hours of service" for purposes of ERISA, thus triggering a plan fiduciary's obligation to credit such hours to the Plan for the appropriate period(s).

Neither condition precedent to a plan fiduciary's obligation under ERISA to credit the Plan for Plaintiffs' alleged "off-the-clock" hours of work have been met. Plaintiffs' ERISA claims will become ripe if – and only if – they obtain an award of back pay against Defendants, or Defendants agree to pay them back pay, and the plan fiduciaries, after being afforded an opportunity to credit the Plan accordingly, refuse to do so. *See, e.g., Gun Owners' Action League v. Swift*, 284 F.3d 198, 205-06 (1st Cir. 2003) ("In determining ripeness, we apply a familiar test: the question in each case is whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (internal citations omitted). Until such time, Plaintiffs' ERISA claims fail as a matter of law and should be dismissed.

**IV.      CONCLUSION**

As noted above, Defendants' Motion For Judgment On The Pleadings Against Plaintiffs' ERISA Causes of Action II and III of Plaintiffs' First Amended Complaint should be granted.

Respectfully submitted,

UMASS MEMORIAL HEALTH CARE, INC., UMASS
MEMORIAL HOSPITALS, INC., UMASS
MEMORIAL MEDICAL CENTER, INC.,
HEALTHALLIANCE HOSPITALS, INC.,
MARLBOROUGH HOSPITAL, THE CLINTON
HOSPITAL ASSOCIATION, WING MEMORIAL
HOSPITAL CORPORATION AND UMASS
MEMORIAL HEALTH CARE 401(k) PLAN

By their attorneys,

*/s/ Lisa A. Schreter*
Lisa A. Schreter (admitted *pro hac vice*)
Angelo Spinola (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E.
Suite 1500 Atlanta, GA  30326
Phone: 404.233.0330
Fax: 404.233.2361
lschreter@littler.com
aspinola@littler.com

Gregory C. Keating (BBO # 564523)
**LITTLER MENDELSON, P.C.**
One International Place
Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
gkeating@littler.com

Dated:  November 19, 2010

## CERTIFICATE OF SERVICE

I, Lisa A. Schreter, hereby certify that on this 19th day of November, 2010, the foregoing

Defendants' Memorandum of Law in Support of their Motion For Judgment on the Pleadings

Against Plaintiffs' ERISA Causes of Action was filed electronically through the ECF system, is

available for viewing and downloading from the ECF system, will be sent electronically to the registered

participants as identified on the Notice of electronic filing and also via first class mail to plaintiffs' counsel

of record:

Jody L. Newman
Ariatna Villegas-Vasquez
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02210-2211

Patrick J. Solomon, Esq.
Michael J. Lingle, Esq.
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY 14607

*/s/ Lisa A. Schreter*
Lisa A. Schreter