## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

**PATRICIA CAVALLARO AND MONIQUE HERMAN,**
*on behalf of themselves and all other employees similarly situated,*

*Plaintiffs,*

v.

**UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL HOSPITALS, INC., UMASS MEMORIAL MEDICAL CENTER, INC., HEALTHALLIANCE HOSPITALS, INC., MARLBOROUGH HOSPITAL, THE CLINTON HOSPITAL ASSOCIATION, WING MEMORIAL HOSPITAL CORPORATION, JOHN O'BRIEN AND PATRICIA WEBB,**

*Defendants.*

</td><td>

Civil Action No.
09-cv-40152-FDS

</td></tr>
</table>

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' FIRST MOTION FOR JUDGMENT ON THE PLEADINGS

### PRELIMINARY STATEMENT

The Fair Labor Standards Act is clear: any person, entity, or group of entities that "suffer[s] or permit[s an employee] to work" is that employee's employer and must comply with the Act's requirements. Defendants' motion is nothing more than an attempt to evade liability under the FLSA by relying on the byzantine technicalities of corporate form rather than consider the reality of plaintiffs' and class members' employment under the FLSA's broad statutory definition of employer.

Defendants argue that the named plaintiffs lack standing to represent other employees of the same Hospital System—employees who were subject to the same system-wide policies and suffered the same injuries as the named plaintiffs—simply because these employees were

employed by defendants to work at different locations within the same Hospital System. Defendants' whole argument is that working for UMass Memorial at different locations means working for different "employers" simply because those locations are technically constituted as different corporate entities.  Defendants, however, ignore the fact that the FLSA sweeps away such formalistic, technical distinctions in favor of the simple, broad, common sense rule that an employee is employed by any person, entity, or group of entities, that "suffer[s] or permit[s that employee] to work.

In addition to ignoring the applicable statute, Defendants also ignore the allegations in the complaint that the class members and the named plaintiffs were employed by the same Hospital System and were also employed by the same individual defendants, John O'Brien and Patricia Webb.  Faced with such allegations, defendants have no choice but to label them as "conclusory" and hope that the Court will ignore the numerous factual allegations that support these allegations.  The liberal notice pleading standards of the Federal Rules, however, do not permit such a course of action.  Defendants' motion is therefore meritless and ought to be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants violated the Fair Labor Standards Act by maintaining several illegal policies that resulted in employees not being paid for all the time that they work.

Defendants maintain an "Unpaid Meal Break Deduction Policy."  Defendants have a computerized electronic time keeping system that automatically deducts a half hour from each hourly employee's time each shift, purportedly for an unpaid meal break, even though defendants do not ensure that their employees are actually relieved from duty during their meal period.  The result is that an employee who works an eight-and-a-half hour shift is only paid for

eight hours. By this policy, defendants save themselves thousands of dollars each month by failing to pay wages that are owed to their hourly employees.

Defendants also maintain an "Unpaid Preliminary and Postliminary Work Policy." Under this policy, defendants permit employees to work "off the clock" before and after their scheduled shifts.

Defendants also maintain an "Unpaid Training Time Policy." Under this policy defendants fail to pay employees for all the time that they spend in compensable training classes and programs. By instituting and maintaining these policies, defendants have required or allowed their employees to work and have failed to adequately compensate them for that work.

These policies apply uniformly to all the locations and corporate entities that make up the Umass Hospital System.

Plaintiffs filed this action against UMass Memorial Health Care, Inc., and the other defendants, on their own behalf and also on behalf of all other UMass employees who are similarly situated, in order to recover their unpaid wages.

Several months into the case, the parties agreed to attempt resolve plaintiffs' claims by mediation. As part of the mediation agreement, defendants requested, for purposes of the mediation, that plaintiffs dismiss the claims against the individual defendants—the corporate officers responsible for maintaining and enforcing the unlawful policies—in order to focus on settling the claims against the Hospital System. Plaintiffs agreed to defendants' request, but on the understanding that the dismissal was only for the purpose of facilitating the mediation, and on the condition that defendants would not object to plaintiffs reinstating the allegations against these defendants if the mediation failed to resolve plaintiffs' claims.

The mediation, however, was unsuccessful.   Shortly after the mediation ended, defendants filed the present motion.   Pursuant to the parties' agreement, plaintiffs have now filed a motion for leave to amend the complaint to reinstate the claims against the individual defendants.   This response is written based on the allegations in plaintiffs proposed Second Amended Complaint.

## ARGUMENT

## I.    LEGAL STANDARD.

A motion for judgment on the pleadings is not an appropriate vehicle to challenge plaintiffs' factual allegations.   As one respected commenter explains, "[t]he motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.   This may occur, for example, in actions brought to obtain the construction of a will or litigation in which the sole question is the applicability or interpretation of a statutory provision." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2010). As defendants' briefing makes clear, the facts in this case are very much in dispute, and defendants' motion should be denied.

As defendants acknowledge, a motion for judgment on the pleadings is measured by the same standard as a motion to dismiss under 12(b)(6).   *See Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 49 n.3 (1st Cir. 2009) (citing *Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 23 (1st Cir. 2009)).   Under that standard, "defendants have the burden of showing that the plaintiffs' claims are insufficient as a matter of law."   *E.g.*, *Nat'l Educ. Ass'n-R.I. v. Retirement Board of R.I. Employees' Retirement Sys.*, 890 F. Supp. 1143, 1150 (D.R.I. 1995).   This Court has called that burden "a heavy one."   *Stein v. Smith*, 270 F. Supp. 2d 157,

164 (D. Mass. 2003) (Lindsay, J.).  In determining whether Defendants have met their burden, the Court must "must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Altern. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *accord Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1 (2002); *see also Bennett v. Spear*, 520 U.S. 154, 168 (1997) ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

In survive a motion to dismiss, a plaintiff need only state a "plausible" claim for relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).  A complaint is plausible when a reasonable jury, taking all the factual allegations as true, could reasonably infer sufficient facts to conclude that the elements of the claim are met.  *See id.*  To state a claim that is plausible, "detailed factual allegations" are not required; all that is required is that the complaint give "fair notice" of the grounds for the claim.  *Id.* at 555.  (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).  That is, "*Twombly* leaves the long-standing fundamentals of notice pleading intact."  *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 15 (D.D.C.2008); *accord Koch v. I-Flow, Inc.*, 715 F. Supp. 2d 297, 302 (D.R.I. 2010) ("Notwithstanding the increase in motion practice, *Twombly* and *Iqbal* do not mark a radical change in federal pleadings standards."); *Taylor v. Pittsburgh Mercy Health Sys., Inc.*, No. 09-377, 2009 WL 2992606, at *2 (W.D. Pa. Sept. 17, 2009) ("*Twombly* and *Iqbal* notwithstanding, the notice pleading standard still applies in federal court.").

## II.   PLAINTIFFS HAVE STANDING TO REPRESENT OTHER, SIMILARLY SITUATED, EMPLOYEES OF THE UMASS HOSPITAL SYSTEM.

Defendants' motion asserts that the named plaintiffs lack standing to represent UMass employees at locations other than the locations where the named plaintiffs worked, even though

they were denied their wages by the same systemwide policies, solely because the locations where they worked may be technically constituted as different corporate entities within the Hospital System.  This argument must fail for several reasons.

First and most importantly, plaintiffs' allegations clearly satisfy the standard for constitutional standing, which defendants fail to address in their motion.

Second, defendants' assertion that the named plaintiffs and class members were not employed by the same employers is contrary to plaintiffs' allegations and is therefore not a basis to dismiss on this motion.

Third, even if defendants were correct that the named plaintiffs and class members were technically employed by different employers, that does not defeat standing under the juridical link doctrine, which has been adopted by this Court.

## A.  PLAINTIFFS' ALLEGATIONS SATISFY THE ELEMENTS OF CONSTITUTIONAL STANDING.

To start, defendants do not argue that plaintiffs lack prudential standing.  Rather, their entire standing argument is based on the theory that plaintiffs lack constitutional standing.  *See Bennett v. Spear*, 520 U.S. 154, 162 (1997) (discussing "constitutional" standing doctrine, which is implied by Article III, and "prudential" or "statutory" standing doctrine, which is a self-imposed limitation on the exercise of jurisdiction, and which may be overridden by Congressional action).  Although the Constitution does not explicitly provide for the standing doctrine, courts have found that standing requirements are implied by the Article III requirement of a "case" or "controversy."  U.S. Const. art. III, § 2, cl. 1.  The only requirement for constitutional standing is that the plaintiff has (1) suffered an "injury-in-fact" that is (2) "fairly

traceable" to the actions complained of, and that will (3) likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997).[1]

On this motion, plaintiffs need not provide any factual showing that the elements of standing are met. Rather, they must only allege, consistent with the liberal pleading standards of Rule 8, that these elements are satisfied. *See, e.g.*, *id.* at 168 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citations omitted); *accord DuBois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281-82 (1st Cir. 1996).[2]

Here, defendants cannot seriously dispute that plaintiffs' allegations satisfy the elements of constitutional standing. First, plaintiffs have alleged that the named plaintiffs, along with other employees of the Hospital System, performed uncompensated work for defendants and that they are therefore owed wages under the FLSA. *See* Second Amended Complaint ¶¶ 78-108.[3] Specifically, plaintiffs have alleged that defendants maintained unlawful policies that applied to all hourly UMass employees that resulted in denial of wages owed under the FLSA. *Id.* Defendants do not dispute that lost wages is an injury in fact.

---

[1]     Curiously, although defendants cite to *Bennet*, they omit the second element—that the injury be fairly traceable to the actions complained of, from their discussion. Defendants' failure to bring this element to the Court's attention does not affect the analysis because this element is clearly satisfied in any event. In the interest of candor and thoroughness, however, plaintiffs include this element in the discussion even though defendants apparently concede that it is met in this case.

[2]     The decision in *Twombly* is not to the contrary. Although *Twombly* applies the principle that the Court may disregard legal conclusions in the complaint, it does not allow the Court to disregard factual allegations as conclusory. *Twombly* does not change the principle that general factual allegations are read to embrace all specific facts necessary to support the allegation. Even the post-*Twombly* authority that defendants rely on recognizes this point. *See Lucas v. BMS Enters., Inc.*, No. 09-2159, 2010 WL 2671305, at *2 n.3 (N.D. Tex. July 1, 2010) ("General factual allegations of injury resulting from defendants' conduct suffice to establish standing at the pleading stage because the court presumes that allegations embrace facts supporting those allegations.") (citing *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Housing & Cmty. Affairs,* No. 08-0546, 2008 WL 5191935, at *3 (N.D. Tex. Dec. 11, 2008) (quoting *Bennett,* 520 U.S. at 168)).

[3]     As explained above, references herein are to plaintiffs' proposed Second Amended Complaint.

Second, it is clear that plaintiffs have alleged that their unpaid wages are the result of the maintenance of the unlawful policies that result in employees being denied their wages, which defendants maintain in all the locations throughout the UMass System.  *See id.* ¶¶ 77-108.  If these allegations are taken as true—as they must be—plaintiffs' injuries and the injuries of the class members are the direct result of the systemwide policies that defendants maintain in all UMass locations  Defendants do not dispute this point. *See supra* note 1.

Third, defendants cannot seriously contend that a decision in plaintiffs' favor would fail to redress these injuries.  Defendants' argument that a decision that one corporate entity within the hospital system violated the law would not redress injuries caused by another corporate entity committing the same violation misses the point.  Plaintiffs have alleged that the Hospital System, along with the individual named defendants, created policies that applied in all its locations, regardless of those locations' status as a corporate entity.  *See, e.g.*, *id.* ¶¶ 80, 95; *see also id.* ¶¶ 21, 22, 28-30, 51-52.  A decision that these facts are true, and that these policies violated the law would redress all injuries caused by those policies, regardless of the location where an employee was subjected to those policies.  *See, e.g.*, *Bennet*, 520 U.S. at 168-171 (rejecting the defendants' argument that the plaintiffs challenging an environmental policy lacked standing to sue the agency that created the policy at issue because the policy was actually created by another agency).

Therefore, because plaintiffs have alleged an injury-in-fact that is fairly traceable to the unlawful policies complained of—neither of which defendants dispute—and because that injury would likely be redressed by a favorable decision, they have standing under Article III.  The real dispute therefore is not whether the named plaintiffs have Article III standing.  The dispute, rather, is whether the named plaintiffs can represent, in a collective action, other employees of

the hospital system who have also been denied their wages because of the same policies that caused the named plaintiffs' injuries.  Contrary to defendants' argument, this is a matter not of constitutional standing, but of prudential standing.  *See id.* (holding that the plaintiffs met the requirements for Article III standing against the agency that created the policies that caused their injuries, even though the policy was implemented by a distinct agency, and turning to the statute at issue to determine if the plaintiffs had prudential standing).

Defendants do not contend, however, that plaintiffs lack prudential standing. Defendants' failure to raise this point is not surprising: any attempt to argue this point would be doomed to failure given that the FLSA expressly authorizes employees to bring an action in their own behalf and on behalf of all "similarly situated" employees.  29 U.S.C. § 216(b); *cf. id.* at 171-172 (holding that the plaintiffs had prudential standing based on a statutory provision that authorized "any person" to sue to enforce the statute's provisions).

Therefore, properly understood, the real issue is whether the named plaintiffs are "similarly situated" to the class members for purposes of the FLSA.  That issue is properly decided not on a motion for judgment on the pleadings, but on plaintiffs' motion for conditional certification and notice.  *See generally Poreda v. Boise Cascade LLC*, 532 F. Supp. 2d 234, 238-41 (D. Mass. 2008) (Neiman, M.J.) (discussing the two-tiered FLSA collective action certification process). Defendants' motion is nothing more than an attempt to artificially impose requirements that are more stringent than the lenient standard that this Court applies to certifying an FLSA collective action.  *See, e.g.*, *Travers v. JetBlue Airways Corp.*, No. 08-1073, 2010 WL 3835029, at *2 (D. Mass. Sept. 30, 2010) (O'Toole, J.) (noting that in an FLSA collective action, "[t]he named plaintiffs need not 'demonstrate the existence of similarly situated persons at every location in the proposed class'").

## B.   DEFENDANTS IGNORE PLAINTIFFS' ALLEGATIONS THAT THE NAMED PLAINTIFFS AND CLASS MEMBERS WERE EMPLOYED BY THE SAME EMPLOYERS.

The basis of defendants' argument is an assumption that the named plaintiffs can only represent employees who were employed by the same person or entity.  As explained below, that assumption does not apply here.  *See infra* § II.C.  But even if that assumption were true, that still would not justify defendants' motion because plaintiffs have clearly alleged that the named plaintiffs and the class members were all employed by the same employers.[4]

Defendants' attempt to characterize these allegations as insufficient to state a claim goes against the vast weight of relevant authority.  In particular, defendants' attempt to characterize plaintiffs' factual allegations as merely conclusory ignores the well-established rule that on this motion, plaintiffs' allegations are to be read in the light most favorable to plaintiffs, *e.g.*, *Swierkiewicz*, 534 U.S. at 508 n.1; *Altern. Energy*, 267 F.3d at 33, and that therefore, general factual allegations are read to embrace all the specific facts necessary to support the general

---

[4]   For this reason, the cases defendants rely on are inapposite:

- *Lucas v. BMS Enters., Inc.*, No. 3:09-2159, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010), on which defendants rely most heavily, is particularly unpersuasive.  The plaintiffs in that case did not allege joint employer or single employer status, but based their argument for standing solely on the injuries to the putative class members.  In other words, the plaintiffs did not allege that the named plaintiffs and class members were employed by the same employer.  In addition, the standing issue was not been briefed by the parties in that case.

- In *Diaz v. Adchem Pharma Operations*, No. 04-1522, 2005 WL 2397489, at *11 (D.P.R. Sept. 28, 2005), the plaintiffs did not allege that the defendants were joint employers or that they were otherwise integrated.  In addition, the court's decision to impose sanctions was based not on lack of standing, but on the fact that plaintiffs' counsel had made frivolous requests by asking for class certification under Rule 23 of FLSA claims, and had ignored numerous procedural directives issued by the court.

- In *Chuy v. Hilton Mgmt., LLC*, No. 6:10-178, 2010 WL 1854120, at *2 (M.D. Fla. May 10, 2010), the plaintiffs sued several hotel chains, and alleged that they were employed by one of the hotel chains, but did not allege that the other chains were interrelated or that they were in any other way joint or single employers.

- In *Daughtery v. I-Flow, Inc.*, No. 09-2120, 2010 WL 2034835, at *2 (N.D Tex. Apr. 29, 2010), the court found finding lack of standing based on lack of causation, because the plaintiff alleged that he was injured by a faulty medical device, but did not allege that any defendant or defendants had manufactured the device.  The court dismissed without prejudice, instructing plaintiff to amend and then to continue to provide more facts through supplemental pleading.

claim, *e.g.*, *Bennet*, 520 U.S. at 162; *DuBois*, 102 F.3d at 1281-82.   Therefore, Courts that have considered meal break claims based on allegations nearly identical to the ones at issue here—post-*Twombly*—have held almost uniformly, that such allegations are sufficient to meet this federal pleading standard. *See, e.g.*, *Hinterberger v. Catholic Health*, No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008); *Gordon v. Kaleida Health*, No. 08-CV-378S, 2008 WL 5114217 (W.D.N.Y. Nov. 25, 2008); *see also Acho v. Cort*, No. C 09-00157 MHP, 2009 WL 3562472, at *2 (N.D. Cal. Oct. 27, 2009); *Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, No. 08-083, 2008 WL 4446539 (D. Ariz. Sep. 30, 2008).

       **1.**     **PLAINTIFFS HAVE ALLEGED THAT THEY AND THE CLASS MEMBERS WERE ALL EMPLOYED BY THE INDIVIDUAL NAMED DEFENDANTS.**

      As a preliminary matter, plaintiffs have alleged that the named plaintiffs and the class members were all employed by the individual named defendants, John O'Brien and Patricia Webb. *See* Second Amended Complaint ¶¶ 50, 72.   As noted above, these allegations against these individuals were removed in the amended complaint pursuant to the parties' mediation agreement.   A condition of that agreement was that if the mediation was unsuccessful, defendants consent to plaintiffs' reinstating those allegations.   Pursuant to that agreement, plaintiffs have now moved for leave to reinstate these allegations.   Because plaintiffs have alleged that the named plaintiffs and class members were all employed by these individuals, defendants' argument that plaintiffs have not alleged an employment relationship is baseless.

      Nor can defendants credibly claim that these allegations fail as a matter of law.   The FLSA defines "employer" broadly to include "**any person**" who acts even "indirectly in the interest of an employer," 29 U.S.C. § 203(d).   Therefore, under the FLSA, any person who "suffer[s] or permit[s an employee] to work," is an employer. *Id.* § 203(g).

The Supreme Court has held that this is "the broadest definition [of the term] that has ever been included in any one act," *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (citing 81 Cong. Rec. 7657), and that "[a] broader or more comprehensive coverage . . . would be difficult to frame," *id.* at 362.  The vast majority of Courts, including the First Circuit, have held that this definition is broad enough to include corporate officers.  *E.g.*, *Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir. 1983) (noting the "overwhelming weight of authority" that a corporate officer "is an employer along with the corporation"); *accord Burroughs v. MGC Servs., Inc.*, No. 08-1671, 2009 WL 959961, at *4 (W.D. Pa. Apr. 7, 2009); *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *12 (S.D.N.Y. 2007).

Courts in the First Circuit and elsewhere therefore routinely hold individual officers liable for violations of the FLSA when they have responsibility for the conduct that caused the violations complained of or where they have significant control over the defendants' operations. *E.g.*, *id.*; *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (affirming a decision holding that the president was liable as an individual employer because he had the ability to direct employment practices, including a policy requiring unpaid work); *Herman v. Hogar Praderas de Amor*, 130 F. Supp. 2d 257, 264 (D.P.R. 2001) (holding president liable as an individual employer for the corporation's violations of the FLSA because she had the ability to set employee compensation policies); *accord Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839, 840 (11th Cir. 2009) (reversing a district court's judgment as a matter of law that an owner was not an employer and remanding for a jury trial); *Gordon*, 2008 WL 5114217, at *4 (denying defendants motion to dismiss, holding that allegations similar to those presented here were sufficient to allege that the President and Vice President of Human Resources of a Hospital System employed the named plaintiffs as well as other hourly employees throughout the system).

The allegations of the complaint are more than sufficient to claim that the individual named defendants employed the named plaintiffs as well as the class members.  Plaintiffs have alleged, for example, the following:

- John O'Brien is the CEO of and Patricia Webb is the Senior Vice President and Chief Human Resources officer of UMass Memorial Healthcare, Inc.  Second Amended Complaint ¶¶ 26, 51.

- John O'Brien and Patricia Webb actively manage UMass's operations and make decisions concerning human resources and employment policies.  *Id.* ¶¶ 27-29, 52.

- John O'Brien and Patricia Webb make authoritative decisions on hiring and firing, employee compensation, employee benefits, and work schedules, including setting systemwide policies that apply in all UMass locations.  *Id.* ¶¶ 33-48, 56-71.

- John O'Brien and Patricia Webb are actively involved in the creation, implementation, maintenance, and enforcement of the illegal policies that caused plaintiffs' injuries.  *Id.* ¶¶ 30-31, 49, 53-55, 72.

Plaintiffs have provided more than sufficient detail to support their factual allegations that the individual named defendants employ all hourly employees within the UMass Hospital System, including the named plaintiffs and the class members.  Defendants may challenge these allegations on the merits at the appropriate time, but they cannot rely on such challenges on this motion, where plaintiffs' allegations are to be taken as true and viewed in the light most favorable to plaintiffs.  Defendants standing argument therefore must fail.

**2.      PLAINTIFFS HAVE ALLEGED THAT THEY AND THE CLASS MEMBERS WERE ALL EMPLOYED BY THE UMASS HOSPITAL SYSTEM.**

Plaintiffs have also alleged that they, along with the class members, were employed by UMass Hospital System.  Defendants argue that they are not employees of the system as a whole, but only of the location where they work.  The FLSA forecloses defendants' reliance on the technicalities of corporate form to restrict the definition of "employer" to the single location

where the employee works.  As noted above, The FLSA defines "employer" broadly to include "**any person**" who acts even "indirectly in the interest of an employer," 29 U.S.C. § 203(d), and defines "person" broadly to include "an individual, partnership, association, corporation, business trust, legal representative, or **any organized group of persons**," *Id.* § 203(a). Therefore, under the FLSA, any "organized group" of individuals, associations, or corporations is an employer of anyone that it "suffer[s] or permit[s] to work." *Id.* § 203(g).

The Supreme Court has repeatedly held this definition sweeps away standard concepts of employer-employee relationships, including associated veil-piercing and alter ego concepts. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Falk v. Brennan*, 414 U.S. 190 (1973); *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947).  Based on this statutory language alone, defendants' motion must fail because the complaint alleges that the named plaintiffs and class members are all employed by the same "organized group of persons."

Likewise, under the FLSA, when multiple employers or a system of employers maintain integrated operations and centralized employment policies or practices, they are considered "joint employers," or a "single employer" or "integrated enterprise" for purposes the FLSA. Under First Circuit precedent, the "joint employer" test focuses on the following four factors:

> (1) the ability to hire and fire,
>
> (2) control over work schedules or employment conditions,
>
> (3) control over the rate and method of employment, and
>
> (4) the maintenance of employment records.

*See Baystate Altern. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998).

Similarly, the "single employer" or "integrated enterprise" test focuses on the following four factors:

(1) common management,

(2) interrelation of operations,

(3) centralized control over labor relations, and

(4) common ownership.

*See Anderson v. Theriault Tree Harvesting, Inc.*, No. 08-330, 2010 WL 323530, at *9-10 (D. Me. Jan. 20, 2010) (granting summary judgment for an employee, applying the "integrated employer" test to hold that two corporations were liable as a single employer).[5]

Given these principles, courts routinely allow FLSA collective actions to proceed on behalf of all employees of an integrated Hospital System, even if those employees worked at locations that were managed by formally distinct corporate entities within the same system. *See, e.g.*, *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2009 WL 1361265, at *5 (W.D. Pa. May 14, 2009) (granting motion for conditional certification of a class of "all non-exempt employees, **regardless of job title or work location**"); *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, No 09-379, 2009 WL 1515175, at *5 (W.D. Pa. June 1, 2009) (certifying a class of "all non-exempt employees, **regardless of job title or work location**").

Defendants' argument that one hospital within the hospital system does not directly control the policies of another hospital within the system ignores the fact that plaintiffs have alleged that all locations within the system are under centralized control and that defendants

---

[5]     Defendants assertion' that integrated operations cannot be held liable under the FLSA as a single employer is incorrect.  Although the "single employer" test was developed in the labor relations context, it has been applied in the context of a variety of federal labor and employment statutes, including the FLSA. *See, e.g.*, *Anderson v. Theriault Tree Harvesting, Inc.*, No. 08-330, 2010 WL 323530, at *9 (D. Me. Jan. 20, 2010) ("[F]ederal courts have applied the integrated enterprise factors in the context of the Fair Labor Standards Act.  In fact, Courts of Appeal have recognized that the remedial purposes of the FLSA require courts to define employer more broadly than the term would be interpreted in traditional common law applications.").  Defendants are also incorrect in suggesting that a parent-subsidiary relationship is somehow an element of the joint employer or single employer tests.  *See id.* ("This case, involving sister corporations, differs somewhat from the traditional parent-subsidiary configuration, but the parties suggest no reason why the same factors would not apply.").

"constitute an integrated, comprehensive, consolidated" health care system. Second Amended

Complaint ¶ 20. For example, plaintiffs have alleged the following:

- Defendants have centralized data conversion systems, compliance programs, supply chain management, financial, computer, payroll, and health records systems that are integrated throughout their locations. *Id.* ¶ 21.

- Defendants have centralized labor relations and human resources. *Id.* ¶ 22.

- Defendants employ a Senior Vice President and Chief Human Resources Officer as part of the management team. *Id.*

- Defendants maintain system-wide policies and certain employee benefit plans. *Id.*

- Defendants share common management, including oversight and management by an administration and Board of Trustees. *Id.* ¶ 23.

- Defendants have common ownership. *Id.* ¶ 24.

In addition, plaintiffs have also alleged that the individual defendants maintained

centralized control over human resources and compensation policies, including the ability to set

policy and make authoritative decisions concerning work schedules, compensation policies,

hiring and firing, and other system-wide policies. *See id.* ¶¶ 26-50. Plaintiffs have also alleged

that in doing so, these individual defendants acted with their authority as officers of UMass. *See*

*id.*

Given the broad definition of employer under the FLSA, which is to be construed

liberally to effectuate the FLSA's broad remedial policies, plaintiffs' allegations, if taken as true,

are sufficient to establish that defendants collectively are plaintiffs' employers, either as joint

employers or as a single integrated enterprise. Plaintiffs have alleged that UMass Memorial,

through its centralized management team, had the ability to hire and fire, the ability to control

work schedules, the ability to set compensation policies, and maintained centralized records.

Plaintiffs have also alleged that defendants maintain common management, that their operations

are interrelated, that they maintain centralized control over labor relations, and that they have common ownership. Defendants' motion must therefore be denied.

### C.     EVEN IF THE PLAINTIFFS WERE EMPLOYED BY DIFFERENT EMPLOYERS, PLAINTIFFS WOULD STILL HAVE STANDING UNDER THE JURIDICAL LINK DOCTRINE.

Finally, even if defendants were correct that the Court may ignore plaintiffs' factual allegations that they were employed by the same employer, it does not follow that the named plaintiffs lack standing to represent other employees who were injured by the same system-wide policies that the caused the named plaintiffs' injuries. In this case, the named plaintiffs have standing to represent similarly situated employees under the juridical link doctrine.

The juridical link doctrine provides that a plaintiff has standing to represent a class of plaintiffs who suffered the same injuries, even if they were injured by different defendants, as long as the injuries stem from a common factual predicate such that a court could reasonably issue a judgment that would remedy the injuries caused by all defendants. *See, e.g.*, *Payton v. County of* Kane, 308 F.3d 673, 678-80 (7th Cir. 2002); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423-24 (6th Cir. 1998); *Moore v. Comfed Sav. Bank*, 908 F.2d 838-39 (11th Cir. 1990); *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973); *accord Weld v. Glaxo Wellcome, Inc.*, 434 Mass. 81, 746 N.E.2d 522, 530 (2001). The juridical link doctrine is a common-sense rule that promotes judicial efficiency and consistency by resolving identical issues in a single proceeding. *See id.* Although the First Circuit has not yet had occasion to adopt this rule, this Court has already applied the juridical link doctrine in at least two previous cases to find that a plaintiff had standing to represent others who were injured in the same way by defendants other than the defendant that injured the plaintiff. *See Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 205-06 (D. Mass. 2002); *In re Pharm. Industry Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003).

Here, even if defendants were correct that the individual corporate entities that make up the UMass Hospital System are technically different employers, plaintiffs' allegations show that they still share enough common integration that the juridical link doctrine applies. Defendants' proposal would result in this Court entertaining a multitude of collective actions against different corporate entities that are all part of the same Hospital System. It would result in a multitude of duplicative cases, each with its own pleadings, motion practice, and discovery schedule, but all based on the same common policies. It is understandable that in a weak economy, defense counsel would welcome such an approach, along with the thousands of hours of duplicative billing that it could potentially create. But such multiplication of efforts would benefit neither the parties nor the Court and should be rejected.

## III.   DEFENDANTS FAIL TO JUSTIFY THEIR REQUEST FOR DISMISSAL WITH PREJUDICE.

Even if defendants were correct that plaintiffs' FLSA claims fail to meet the pleading standard, defendants have failed to justify their request for dismissal with prejudice. In fact, the only case defendants cite that supports their position took the opposite approach, and allowed the plaintiffs in that case to amend their complaint in order to correct the pleading deficiencies that the Court found to exist in that case. *See Lucas v. BMS Enters., Inc.*, No. 09-2159, 2010 WL 2671305, at *4 (N.D. Tex. July 1, 2010).

Should the Court grant defendants' motion, plaintiffs respectfully ask that the motion be granted without prejudice and that they be permitted to file an amended complaint. *See* Fed. R. Civ. P. 15 (providing that "[t]he Court should freely give leave [to amend] when justice so requires"). Dismissal with prejudice would be particularly inappropriate in this case because defendants failed to raise these arguments in a pre-answer motion to dismiss and plaintiffs have therefore not been given opportunity to correct the alleged deficiencies that defendants raise in

this motion.  *Cf. Spear v. Somers Sanitation Serv., Inc.*, 162 F.R.D. 1, 2-4 (D. Mass. 1995) (finding that a complaint failed to state a claim, but granting the plaintiffs' request to amend to correct pleading deficiencies because the "plaintiff 'ought to be afforded an opportunity to test his claim on the merits'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Therefore, even if the Court agrees with defendants that the complaint should be dismissed, there is no reason for dismissal with prejudice and plaintiffs respectfully ask that they be given leave to file an amended complaint.

## CONCLUSION

Plaintiffs' allegations are sufficient that each of the three elements for constitutional standing is satisfied.  Defendants' motion to dismiss for lack of standing therefore fails.  In addition, plaintiffs have sufficiently alleged that they are employed by the defendants and defendants' motion is meritless.  For all these reasons, plaintiffs respectfully ask that the Court deny defendants' motion.

Dated: January 14, 2011

Respectfully submitted,
PATRICIA CAVALLARO, et al.,
and all others similarly situated

By their attorneys,

/s/ Patrick J. Solomon
Patrick J. Solomon (admitted *pro hac vice*)
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY 14607
(585) 272-0540
psolomon@theemploymentattorneys.com

Jody L. Newman (BBO No. 542264)
DWYER & COLLORA LLP
600 Atlantic Avenue
Boston, MA  02210-2211

(617) 371-1000
jnewman@dwyercollora.com

## CERTIFICATE OF SERVICE

      I hereby certify that this document has been filed through the ECF system, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: January 14, 2011                                  /s/ Patrick J. Solomon