## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PATRICIA CAVALLARO,** *on behalf of herself and all other employees similarly situated,* <br><br> *Plaintiff,* <br><br> v. <br><br> **UMASS MEMORIAL MEDICAL CENTER, INC.,** <br><br> *Defendant.* | **Civil Action No.** <br> **09-CV-40152-FDS** <br><br> **[LEAVE GRANTED TO FILE EXCESS PAGES ON 5/1/13]** |

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY REVIEW AND ORDER AUTHORIZING NOTICE OF THE PROPOSED SETTLEMENT AND NOTICE OF FINAL FAIRNESS HEARING AND INCORPORATED MEMORADUM OF LAW

Plaintiff Patricia Cavallaro ("Plaintiff") by and through her counsel, hereby moves the Court for an order authorizing notice of the proposed settlement ("Settlement") set forth in the Stipulation and Settlement Agreement ("Settlement Agreement"),[1] attached hereto as Exhibit A. Specifically, Plaintiff respectfully requests that the Court enter the proposed Order attached hereto as Exhibit B ("Order Authorizing Notice of the Proposed Settlement and Notice of the Final Fairness Hearing"), including provisions:

1.    granting Plaintiff's request to amend the Complaint in the Litigation (attached hereto as Exhibit E) and granting Defendant UMass Memorial Medical Center, Inc. ("Defendant" or "UMMMC") fourteen (14) calendar days from the entry of this Order to file an Answer;

2.    asserting jurisdiction over the claims alleged, the Plaintiff and Defendant (collectively "Parties") in the Litigation, and the implementation and administration of the Settlement Agreement;

3.    an order authorizing notice of the proposed settlement and notice of Final Fairness Hearing as set forth in the Settlement Agreement (or as the same may be modified

---

[1]    The exhibits to the Settlement Agreement include the CAFA notice, four Claim Forms (one directed to current employees of Defendant, one directed to former employees of Defendant, one directed to current employees of Non-UMMMC entities who previously filed consents to join this case, and one directed to former employees of Non-UMMMC entities who previously filed consents to join this case), a Settlement Notice, a list of covered clinical, non-exempt positions at UMMMC, and a list of compliance hotline numbers.

by subsequent mutual agreement of the Parties) as adequate, fair, and reasonable and in the best interests of Plaintiff, Opt-In Plaintiffs, all members of the Settlement Classes, and Non-UMMMC Opt-in Plaintiffs;

4.      preliminarily certifying pursuant to FED. R. CIV. P. 23 and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") the Settlement Classes for purposes of settlement only;

5.      appointing Patricia Cavallaro as "Plaintiff," who together with Class Counsel, shall be authorized to act on behalf of Plaintiff, Opt-In Plaintiffs, members of the Settlement Classes, and Non-UMMMC Opt-in Plaintiffs with respect to the Litigation and this Settlement Agreement;

6.      appointing Class Counsel as counsel for the Settlement Classes pursuant to FED. R. CIV. PRO. 23(g);

7.      appointing a third-party claims administrator who is acceptable to the Parties as the Claims Administrator;

8.      approving the form and content, and authorizing distribution of the Settlement Notice (Exhibit 7 to the Settlement Agreement) and Claim Forms (Exhibits 2 to 5 to the Settlement Agreement) and setting a forty-five (45) calendar day deadline for the execution and return of Claim Forms, filing of objections, or opting-out;

9.      requiring Current Employees as of the Court's entry of this Order who wish to participate in the settlement to complete the Current Employee Certification that is included on the relevant Claim Forms and comply with the requirements therein; and

10.     setting the hearing date for the final fairness hearing.

In support of the Plaintiff's unopposed motion for preliminary review and order authorizing notice of the proposed settlement and notice of final fairness hearing, Plaintiff submits the following incorporated memorandum.

## I.     INTRODUCTION

Plaintiff hereby moves for preliminary review of the proposed Settlement Agreement, which has been reached after more than three years of arm's-length and good faith negotiations, including face to face mediations before Hunter Hughes, Esq., a mediator with extensive experience mediating complex wage and hour cases such as this one, and a mediation with the

Honorable Patrick J. King through the CAMP settlement process at the First Circuit Court of Appeals.  The proposed Settlement Agreement will provide a fair and reasonable recovery to the clinical, non-exempt employees of Defendant (the "Clinical, Non-Exempt Employees") who had potential claims challenging Defendant's pay practices under the FLSA, 29 U.S.C. § 201, *et seq.,* as well as fair and reasonable recovery to the few current and former employees of non-UMMMC entities who previously filed consents to opt-in to this Litigation.

The proposed Settlement Agreement resolves claims raised by the Named Plaintiff alleging violations of federal law.  In the more than three years since the filing of Litigation (and the related action filed in state court asserting claims under Massachusetts state and common law), the Parties have engaged in extensive motion practice, including two separate appeals at the First Circuit Court of Appeals and informal discovery, as more fully set forth in the attached Settlement Agreement.  Indeed, the Parties voluntarily attended mediations with two different mediators which involved the exchange of additional information, discovery, and legal arguments on the merits.  The continued negotiations following these mediations resulted in a proposed agreement to settle the Litigation on the terms set forth in the Settlement Agreement. As this settlement is the product of arm's-length negotiations by informed and experienced counsel following the exchange of sufficient discovery, the terms of the Settlement Agreement are presumptively fair, reasonable, and deserving an order authorizing notice of the proposed settlement and notice of the final fairness hearing. ALI PRINCIPLES OF LAW AGGREGATE LITIGATION A.L.I. 2010 ("AGGREGATE LITIGATION"); *In re M3 Power Razor Sys. Mktg. & Sales,* 270 F.R.D. 45 (D. Mass. 2010).

## II.    SUMMARY OF THE TERMS OF THE SETTLEMENT AND RELIEF PRESENTLY SOUGHT

The Settlement Agreement provides that, if approved by the Court, Defendant will pay no more than a maximum of Two Million Two Hundred Thousand and No/00 Dollars ($2,200,000) to resolve this Litigation ("Maximum Gross Settlement Amount").  *See* Settlement Agreement at § II.AA.   The proposed Settlement Agreement will be administered by an independent, experienced third-party claims administrator, Class Action Administration, Inc. (the "Claims Administrator").   The Maximum Gross Settlement Amount includes the Final Settlement Payments to members of the Final Settlement Classes and Non-UMMMC Opt-in Plaintiffs, as well as Class Counsel's Fees (of which Class Counsel will seek 33 1/3% of the total Maximum Gross Settlement Amount), subject to Court approval.   In addition, the Settlement Agreement provides for Service Payment to the Named Plaintiff in an amount not to exceed $2,500 (as long as Plaintiff is an Authorized Claimant), to be paid out of the Maximum Gross Settlement Amount, subject to Court approval.  *See id.* at § VIII.   Further, all Settlement Expenses, Mediation Costs, Expert Fees and Costs, Plaintiff's and Class Counsel's Costs and the Settlement Classes,' Non-UMMMC Opt-in Plaintiffs,' and Defendant's portion of taxes on the Final Settlement Payments, including but not limited to all FICA and FUTA taxes on the Final Settlement Payments, are to be paid out of the Maximum Gross Settlement Amount.  *See id.* at § II.AA.

As set forth more fully in the Settlement Agreement, Defendant has asserted and continues to assert defenses to this Litigation and has expressly denied and continues to deny any wrongdoing or legal liability of any kind associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in this Litigation and Plaintiff's Complaints.

Discussed more fully in the Settlement Agreement, the proposed Settlement Agreement includes a release of the following claims:  (i) any and all claims asserted at any time in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, vacation, commissions, bonuses, severance pay, retaliation for complaining about wages or for asserting wage-related claims, or any other wage-related or recordkeeping-related claims, damages including but not limited to back wages, liquidated damages, and/or treble damages, or relief of any kind under any federal, state, local, or other applicable law, including but not limited to the FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under Massachusetts law, including but not limited to Mass. Gen. Laws ch. 149 § 100, *et seq.;* the Massachusetts Payment of Wages Act, Mass. Gen. Laws ch. 149 § 148, *et seq.*(including but not limited to §148 and § 150), the Massachusetts Overtime Law, Mass. Gen. Laws ch. 151, § 1A, *et seq.* (including but not limited to § 1A and § 1B), the Massachusetts Minimum Fair Wages Statute, Mass. Gen. Laws ch. 151 § 1, *et seq.*, the Minimum Wage Regulations, 455 CMR § 2.01, *et. seq.*; Massachusetts Prevailing Wage Laws, including Mass. Gen. Laws ch. 149 § 26, *et seq.*, or any other statutes and/or regulations regulating hours of work, minimum wages, overtime wages, the payment of wages, retaliation, or recordkeeping of any kind; (iii) any and all claims under any federal, state, local, or other applicable law for wages, overtime, hours worked, and/or missed or interrupted meal breaks, including any claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records, and any other claims under tort, contract, or quasi-contract theories; (iv) any and all claims pursuant to or derived from ERISA, 29 U.S.C. § 1001, *et seq.,* to the extent such ERISA claims are premised on an alleged failure to credit any member of the

Settlement Classes' account and/or benefits for all hours worked or all compensation paid or entitled to be paid; (v) any and all claims pursuant to or derived from the RICO Act, 18 U.S.C. § 1961, *et seq.,* premised on an alleged failure to pay wages due.

For settlement purposes only, Plaintiff requests and Defendant does not oppose certification of a FLSA Settlement Class and a Rule 23 Settlement Class ("Settlement Classes").

Each member of the Settlement Classes' Potential Settlement Payment will vary, as the formula takes into consideration the inherent uniqueness in damages that may exist among those included under the Settlement Agreement. The primary claim assessed was alleged meal break violations that resulted in work being performed in excess of 40 hours a week which was not compensated. The formula takes into account only those weeks where an employee performed 40 or more hours of work ("Eligible Weeks"), and that eligible member of the Settlement Class will receive a pro rata share of the Revised Maximum Gross Settlement Amount[2] based upon their hourly rate and number of Eligible Weeks worked during the applicable time period, which is the three-year period preceding the date of the Order authorizing notice of the proposed settlement and notice of final fairness hearing. After this calculation is performed, if any resulting amount is less than one hundred dollars ($100.00) for a member of the Settlement Classes who opted into the Litigation prior to the date of the Order authorizing notice of the proposed settlement and notice of final fairness hearing and worked at UMMMC, that individual will be eligible to receive a Potential Settlement Payment sufficient to bring his or her Potential Settlement Payment to $100.00. The Potential Settlement Payments for other members of the Settlement Classes who opted into the Litigation prior to the date of the Order authorizing notice

---

[2] The Revised Maximum Gross Settlement Amount means the Maximum Gross Settlement Amount minus all Class Counsel's Fees and Costs, Mediation Costs, Service Payment, Settlement Expenses, Expert Costs and Fees, and an amount equal to the Settlement Classes', Non-UMMMC Opt-in Plaintiffs' and Defendant's portion of taxes on Final Settlement Payments, including but not limited to all FUTA and FICA on the Final Settlement Payments.

of the proposed settlement and notice of Final Fairness Hearing and worked at UMMMC are rebalanced to ensure they receive a minimum Final Settlement Payment of $100.00.  The Parties determined that a minimum payment was appropriate for individuals who affirmatively opted into the lawsuit and met the Settlement Class definition – meaning they were UMMMC clinical, non-exempt employees during the relevant time period, similar to Named Plaintiff Patricia Cavallaro.  Further, the parties settled on the amount of $100.00 while considering the offsets for premiums, shift differentials, and similar payments to employees that could have been applied against any claimed amounts owed should the case continue in litigation.   The Settlement Agreement further provides, if any resulting amount is less than twenty five dollars ($25.00) for a member of the Settlement Classes who did not opt-in prior to the date of the Order authorizing notice of the proposed settlement and notice of final fairness hearing, that individual will be eligible to receive a Potential Settlement Payment sufficient to bring his or her Potential Settlement Payment to $25.00.  Again, the Potential Settlement Payments for other members of the Settlement Classes are rebalanced to ensure member of the Settlement Classes who did not previously opt in receive a minimum Final Settlement Payment of $25.00.  Non-UMMMC Opt-in Plaintiffs, those individuals who opted into the Litigation but did not work at Defendant, will be eligible for a Potential Settlement Payment of $100.00.

After the close of the Claim Submission Period, the Claims Administrator will determine what percentage of the Revised Maximum Gross Settlement Amount was claimed by "Authorized Claimants."[3]

---

[3]     Under the Settlement Agreement, an Authorized Claimant is a member of the Settlement Classes or the authorized legal representative of such member of the Settlement Classes or a Non-UMMMC Opt-in Plaintiff, who submits a timely and fully completed Claim Form and Current Employee Certification (if a Current Employee), and becomes entitled to receive a Final Settlement Payment.

Any amount of the Maximum Gross Settlement Amount that is not distributed as Final Settlement Payments or pursuant to Class Counsel's Fees and Costs, Settlement Expenses, Mediation Costs, Service Payment, Expert Fees and Costs, and the Settlement Classes', Non-UMMMC Opt-in Plaintiffs' and Defendant's portion of taxes, including but not limited to all FICA and FUTA of Final Settlement Payments, shall remain the property of Defendant. *See* Settlement Agreement at § V.C.

The proposed Settlement Agreement provides that the Claims Administrator will mail each member of the Settlement Classes and Non-UMMMC Opt-In Plaintiff (*see* Settlement Agreement § XII) a Settlement Notice and appropriate Claim Form. *See* Settlement Agreement at Exhibits 2 to 5. In order to receive a full settlement payment, members of the Settlement Classes and Non-UMMMC Opt-in Plaintiffs must submit a fully completed Claim Form and Current Employee Certification (if a Current Employee of Defendant or one of the Affiliated Entities defined in the Settlement Agreement by the Court's entry of the order authorizing notice of the proposed settlement and notice of final fairness hearing), so that it is received by the Claims Administrator on or before forty-five (45) calendar days after the date the Settlement Notice and Claim Forms are post-marked to members of the Settlement Classes. *See id.* at § II.C. For members of the Final Settlement Classes and Non UMMMC Opt-in Plaintiffs, Defendant will obtain a release as stated more fully in the Settlement Agreement. *See id.* at § IX. Members of the Rule 23 Settlement Class who do not timely Opt-Out, will be deemed to be members of the Final Settlement Classes for all purposes under the Settlement Agreement; will be bound by the terms and conditions of this Settlement Agreement, the Final Approval Order, the Final Judgment, and the releases set forth therein; and will be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the settlement. *See id.*

After Court approval of the Settlement Agreement at or after the Final Fairness Hearing, such approval becoming final, the completion of settlement administration, and upon further order of the Court, the Claims Administrator will ensure distribution of Final Settlement Payments to the members of the Final Settlement Classes and Non-UMMMC Opt-in Plaintiffs, as set forth in the Parties' proposed Settlement Agreement. *Id.* § VI.R.

Plaintiff proposes that the Court adopt the schedule set forth below, for the Parties to effectuate the various steps in the settlement approval process under the Settlement Agreement:

| Deadline | Event |
|---|---|
| Approximately 20 calendar days after entry of Order Authorizing Notice of the Proposed Settlement and Notice of Final Fairness Hearing: | Defendant provides Claims Administrator list of Information for each member of the Settlement Classes and Non-UMMMC Opt-in Plaintiffs (as defined in the Settlement Agreement) Mailing of Settlement Notice and Claim Forms. |
| 15 calendar days following receipt of list of members of Settlement Classes and Non-UMMC Opt-in Plaintiffs: | Claims Administrator shall calculate Potential Settlement Payments and provide calculations to Class Counsel and counsel for Defendant |
| 10 business days from receipt of Potential Settlement Payments calculations: | Class Counsel and Defendant may review, verify and comment on calculations provided by the Claims Administrator. |
| Within 15 calendar days after Claims Administrator has finalized the Potential Settlement Payment amounts: | Claims Administrator shall mail the Court-authorized Settlement Notice and Claim Forms |
| Fifteen (15) calendar days before the BAR DATE: | Mailing of a reminder postcard to each member of the Settlement Classes who has not yet submitted a Claim Form |
| 45 calendar days after date mailing of Settlement Notice and Claim Forms: | Last day for members of the Settlement Classes or Non-UMMMC Opt-in Plaintiffs to "opt out" or to submit a written objection to the settlement. Claims Administrator must receive opt-out and/or objection on or before 45 days after date mailing of Settlement Notice and Claim Forms. |
| 45 calendar days after date mailing of Settlement Notice and Claim Forms: | Last day for members of the Settlement Classes and Non-UMMMC Opt-in Plaintiffs to qualify as an "Authorized Claimant" by filing Claim Form. Claims |

|  | Administrator must receive Claim Form on or before 45 calendar days after date mailing of Settlement Notice and Claim Forms. |
|---|---|
| Approximately 110 calendar days after date of mailing of Settlement Notice and Claim Forms: | Last day for filing documents in support of Final Fairness Hearing and approval of the Settlement. |
| Approximately 135 calendar days after the Court enters an Order Authorizing Notice of the Proposed Settlement and Notice of Final Fairness Hearing of the proposed Settlement Agreement | Final Fairness Hearing Seeking Approval of the Settlement. |
| Within 20 business days after the Final Effective Date (as defined in the Settlement Agreement): | Qualified members of the Settlement Classes and Non-UMMMC Opt-In Plaintiffs (collectively "Authorized Claimants") shall be mailed a Final Settlement Payment (as set forth more fully in the Settlement Agreement) and all members of the Final Settlement Classes will be mailed a copy of the Final Approval Order. |
| Within 10 calendar days after the Final Effective Date (as defined in the Settlement Agreement): | Defendant will effectuate payment of Class Counsel's Fees and Costs (as defined the Settlement Agreement) to the Claims Administrator, who thereafter will effectuate payment of Class Counsel's Fees and Costs as defined in the Settlement Agreement. |
| Within 20 business days after the Final Effective Date (as defined in the Settlement Agreement): | The Claims Administrator will effectuate payment of Service Payment to Plaintiff, if any (as set forth more fully in the Settlement Agreement). |
| 90 calendar days from the date on which the Final Settlement Payments are mailed: | Last day for qualified members of the Settlement Classes and Non-Opt-in Plaintiffs who were mailed a Final Settlement Payment to negotiate settlement check (as set forth more fully in the Settlement Agreement). |

As set forth below, Plaintiff submits that the proposed Settlement Agreement satisfies all the criteria for preliminary settlement review and an order preliminarily approving the proposed settlement and notice of final fairness hearing under federal and state law in that it falls well

within the range of reasonableness. Accordingly, Plaintiff respectfully requests that the Court grant the requested relief.

## III. PROCEDURAL HISTORY

### A. The Litigation

On September 3, 2009, Plaintiff Patricia Cavallaro and then named plaintiff Monique Herman ("Original Plaintiffs") commenced this Litigation by filing a complaint in the United States District Court for the District of Massachusetts, Case Number 09-cv-40152-FDS. In their complaint, the Original Plaintiffs asserted violations of the FLSA, as well as ERISA, and RICO, on behalf of themselves and other individuals who had been employed by Defendant or several Affiliated Entities of Defendant. The Original Plaintiffs alleged, on behalf of themselves and other individuals who had been employed by Defendant or several Affiliated Entities, that Defendant and its Affiliated Entities suffered or permitted various employees of Defendant or its Affiliated Entities to work without compensating them for all such hours worked as required by the FLSA. In addition, the Original Plaintiffs alleged, on behalf of themselves and other individuals who had been employed by Defendant or several Affiliated Entities, that Defendant and its Affiliated Entities failed to keep accurate records and breached their required ERISA fiduciary duties. The Original Plaintiffs also alleged, on behalf of themselves and other individuals who had been employed by Defendant or several Affiliated Entities, that Defendant and its Affiliated Entities engaged in an enterprise that comprised a pattern of racketeering activity by issuing misleading payroll checks in violation of RICO. Finally, the Original Plaintiffs alleged, on behalf of themselves and other individuals who had been employed by Defendant or several Affiliated Entities, that Defendant and its Affiliated Entities were estopped from asserting statutes of limitations defenses against the Original Plaintiffs. [*See* Docket No. 1, September 3, 2009, Case No. 1:09-cv-4015-FDS].

On or about September 10, 2009, the Original Plaintiffs filed a complaint in the Middlesex Superior Court, Commonwealth of Massachusetts, Case No. 09-3539.  In their complaint, the Original Plaintiffs asserted violations of Massachusetts wage laws, including MASS. GEN. LAWS CH. 149 §§ 148, 150 and MASS. GEN. LAWS CH. 151, §§ 1A, 1B, on behalf of themselves and other individuals who had been employed by Defendant or several Affiliated Entities.

The Original Plaintiffs alleged that Defendant and several Affiliated Entities suffered or permitted various employees of Defendant or its Affiliated Entities to work without compensating them for all such hours worked as required by Massachusetts state law.  In addition, the Original Plaintiffs alleged, on behalf of themselves and other individuals who had been employed by Defendant or its Affiliated Entities, other class action claims under Massachusetts state law, including but not limited to, claims for breach of express contract (for earned wages and missed or interrupted meal breaks), breach of implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records.  On October 16, 2009, the other original defendants[4] removed this state action from Middlesex Superior Court, Commonwealth of Massachusetts, to the United State District Court for the District of Massachusetts, Case No. 1:09-cv-11725-DPW.  [*See* Docket No. 1, October 16, 2009, Case No. 1:09-cv-11725-DPW].

The Parties engaged in litigation over several years, including three motions to dismiss (*see* No. 09-40152, Docket Nos. 14 and 169; No. 09-40181, Docket No. 20), motions for

---

[4]        In addition to Defendant, the eight other original defendants in the State Action were the following:  UMass Memorial Health Care, Inc., UMass Memorial Hospitals, Inc., HealthAlliance Hospitals, Inc., Marlborough Hospital, The Clinton Hospital Association, Wing Memorial Hospital Corporation, John O'Brien, and Patricia Webb.

judgment on the pleadings (*see* No. 09-40152, Docket No. 78; No. 09-40181, Docket No. 93) and Plaintiffs' motion for remand (*see* No. 09-40181, Docket No. 27).  *See* Declaration of Patrick J. Solomon, attached hereto as <u>Exhibit C</u> sworn hereto on April 19, 2013 ("Solomon Decl.") ¶¶ 2-3.  After this Court granted the original defendants' judgment on the pleadings, and closed the cases, the Original Plaintiffs filed appeals of both the state and federal actions.  *See* Nos. 11-1793, 11-1073 (1st Cir.).  Following the briefing and oral arguments, the First Circuit vacated and remanded the Federal Action and affirmed the state decision in the State Action. *Cavallaro v. UMass Memorial Healthcare, Inc.,* 678 F.3d 1 (1st Cir. 2012).

Plaintiff Cavallaro, now the only named plaintiff in the Litigation, reinstituted her collective action through a third amended complaint against the original defendants in the Federal Action.[5]  Docket No. 112.  Following this Court's order on defendants' partial motion to dismiss, Plaintiff's FLSA claims on behalf of Defendant's employees remained.

The Original Plaintiffs intended to certify an opt-in collective action with respect to their FLSA claims; and to certify an opt-out class under Rule 23 of the Federal Rules of Civil Procedure with respect to their remaining claims.  However, class motions were not filed.  With respect to damages, the Original Plaintiffs sought the value of their and putative class members' unpaid wages, and an award of liquidated damages, reasonable attorneys' fees, expenses, expert fees, costs, and pre- and post-judgment interest.

### B.    Arms-Length Negotiations

Throughout the more than three years of Litigation, the Parties have engaged in arms-length negotiations and discussions regarding the resolution of the claims.  Initially, on or about

---

[5]        In addition to Defendant, the nine other original defendants in the Federal Action were the following: UMass Memorial Health Care, Inc., UMass Memorial Hospitals, Inc., HealthAlliance Hospitals, Inc., Marlborough Hospital, The Clinton Hospital Association, Wing Memorial Hospital Corporation, John O'Brien, Patricia Webb, and UMass Memorial Healthcare 401K.

June 2010, the Parties entered into a Confidential Mediation Agreement, and the Parties agreed to cease all litigation-related activity and attempt to reach full and complete resolution of the claims in the federal and state complaints through mediation. *See* Solomon Decl. ¶ 5.

Over the subsequent months, the Parties exchanged information necessary to meaningfully examine, analyze, and mediate the claims at issue in this litigation. *Id.* ¶ 6.  Class Counsel specifically requested certain information about the potential class size, pay rates, work schedules, time actually recorded, scope of employment, and other potentially relevant information, which Defendant provided to Class Counsel prior to the mediation. *Id.* ¶ 7.  In turn, both Parties utilized experts to conduct their own analysis regarding any potential liability.

The Parties prepared detailed mediation briefs setting forth the merits of their respective positions based upon the relevant law and facts and attended mediation before Hunter Hughes, Esq., who has extensive experience in mediating similar nationwide wage and hour cases with "hybrid" allegations pursuant to both state and federal law.

In preparation for mediation and in the course of this Litigation, Class Counsel conducted significant factual investigation. *Id.* ¶ 8.  The investigation included research into the claims and analysis of the actual work performed by the Clinical, Non-Exempt Employees and the manner in which Defendant compensated them. *Id.* ¶ 9.  Class Counsel also conducted extensive interviews with Plaintiff and certain other Clinical, Non-Exempt Employees with respect to the claims at issue in this Litigation. *Id.* ¶ 10.  Class Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the claims asserted and Defendant's defenses. *Id.* ¶ 11.  In preparation for the two mediation and subsequent settlement negotiations, Defendant analyzed payroll records and time records for Clinical, Non-Exempt employees as well as the premium, shift differential and other payments

14

for which it claims an offset against any claimed amounts owing. Defendant interviewed witnesses regarding the various allegations. Defendant also analyzed its various policies, practices, and training covering and provided to employees seeking to ensure payment to non-exempt employees of all time worked. Throughout the mediation and negotiations, Defendant engaged a third-party consulting expert. (*See* Declaration of Lisa A. Schreter, <u>Exhibit D</u>, ¶¶ 1-9) These efforts culminated in the preparation of the Parties' mediation briefs, which were submitted to the mediator and exchanged between the Parties' counsel in order to facilitate the mediation. Solomon Decl. ¶ 12. The mediation included open discussion and debate between the Parties and through the neutral, third-party mediator regarding the Parties' differing legal positions analyzing the applicable law as applied to Defendant's pay practices. *Id.* ¶ 13.

The mediation itself was conducted over the course of a full day and entirely at arm's-length. *Id.* ¶ 14. The claims and likelihood of their success were debated between the Parties through Mr. Hughes, and the Parties also discussed various points outside the presence of the mediator. *Id.* ¶ 15. Matters addressed included the size and scope of the alleged claims, the likelihood of success on the merits, the likelihood of class and collective action certification, the manner in which alleged damages could be calculated and obtained, and the uncertainty of further litigation and potential outcomes. *Id.* ¶ 16.

The Parties were unable to resolve the Litigation at the in-person mediation. *Id.* ¶ 17. Negotiations continued after the mediation, and the Parties again attended a mediation on May 12, 2011. *Id.* ¶ 18. This time the mediation was conducted through the First Circuit Court of Appeals CAMP settlement program, and with the Honorable Patrick J. King. *Id.* ¶ 19. Despite the full day session, the Parties were still unable to resolve the Litigation. *Id.* ¶ 20.

On or about February 2013, the Parties once again entered into a Confidential Agreement whereas the Parties agreed to cease all litigation-related activities temporarily and exchange additional information in order to meaningfully examine and analyze the claims still at issue in the Litigation. *Id.* ¶ 21. Over a million lines of data was exchanged, and the Parties again utilized experts to conduct their own analyses of the potential liability. *Id.* ¶ 22.

Over the subsequent weeks, the Parties continued negotiations and were able to reach a resolution on April 2, 2013. The Parties are of the opinion that the proposed Settlement Agreement is fair, reasonable and adequate. Further, Class Counsel believes the proposed Settlement Agreement is in the best interest of the members of the Settlement Classes in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and additional appellate issues Defendant may assert. Such litigation would likely take many years until final resolution, but the proposed Settlement Agreement here, being presented to the Court now, is, accordingly a result well to be benefit of the members of the Settlement. In addition, Class Counsel has advised the representative Plaintiff of the Settlement Agreement, who approves of the Settlement. *Id.* ¶ 23.

## IV.   LEGAL ARGUMENT

### A.   The Proposed Settlement Agreement Should Be Preliminarily Reviewed by the Court and Notice Authorized

By this Motion, the Plaintiff seeks preliminary review and an order authorizing notice of the proposed settlement and notice of final fairness hearing. *See In re M3 Power Razor,* 270 F.R.D. at 49. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Durett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp.,* 614 F.2d 11, 15 (1st Cir. 1980); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998)

("Prudential II").  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  *See New England Carpenters Health Benefits Fund v. Firth DataBank, Inc.,* 602 F.Supp.2d 277, 281-282 (D. Mass. 2009).  As discussed more fully below, at this stage, there is clear evidence that the proposed Settlement Agreement is well within the range of possible approval and, thus, the Court should authorize notice of the proposed settlement and notice of final fairness hearing.

1.   The standards and procedures for preliminary authorization

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> >
> > (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> >
> > (3) The Parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> >
> > (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> >
> > (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); *Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (1997); *Durett*, 896 F.2d at 604.

In determining whether an order authorizing notice of the proposed settlement and notice

of final fairness hearing is warranted, the primary issue before the Court is whether the proposed

settlement is within the range of what might be found fair, reasonable and adequate, so that

notice of the proposed settlement should be given to class members, and a hearing scheduled to

determine final approval. *See In re M3 Power Razor,* 270 F.R.D. at 62; Manual for Complex

Litigation (Fourth), § 13.14, at 172-73 (2004) ("Manual Fourth") (at the preliminary stage,

"the judge must make a preliminary determination on the fairness, reasonableness, and adequacy

of the settlement terms and must direct the preparation of notice of the certification, proposed

settlement, and date of the final fairness hearing."). Preliminary authorization permits notice of

the hearing on final settlement approval to be given to members of the settlement class, at which

time they and the settling Parties may be heard with respect to final approval. Manual Fourth

at 322. Preliminary authorization is, therefore, the first step in a two-step process required before

a class action may be finally settled. *Id.* at 320. In some cases, this initial assessment can be

made on the basis of information already known to the court and then supplemented by briefs,

motions, and an informal presentation from the settling Parties. *Id.* at 320-21.

In deciding whether notice of a settlement should be preliminarily authorized under Rule

23, courts look to whether there is a basis to believe that the more rigorous final approval

standard will be satisfied. *See id.* at § 21.633, at 321 ("Once the judge is satisfied as to the

certifiability of the class and the results of the initial inquiry into the fairness, reasonableness,

and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the

class members.") The standard for final approval of a settlement consists of showing that the

settlement is fair, reasonable, and adequate. *See*, *e.g.*, *Durett,* 896 F.2d at 604; *Prudential II,* 148

F.3d at 316-17; *GM Trucks,* 55 F.3d at 785.

2. <u>There is a strong basis to believe that the Proposed Settlement Agreement is fair, reasonable, and adequate</u>

Before granting final approval of a proposed settlement, the Court must find that it is fair, reasonable, and adequate.  *See, e.g.,* FED. R. CIV. P. 23(e); MASS. R. CIV. P. 23(c); *Durett,* 896 F.2d at 604; *Sniffin v. Prudential Ins. Corp.,* 395 Mass. 415 (Mass. 1985).

A "strong initial presumption" of fairness arises where the Parties can show that "the settlement was reached after arm's-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small."  *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F. 3d 1041, 1043 (1st Cir. 1996).

"[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement."  *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal citation and quotations omitted).  As a result, courts in the First Circuit rely on a number of factors, which commonly include:  (1) the complexity, expense, and duration of litigation, if the proposed settlement agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the proposed settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the Plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the proposed settlement agreement provides benefits which the Plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; and (8) the proposed settlement agreement's terms and conditions.  *See, e.g.*, *Rolland v. Patrick*, 562 F. Supp. 2d 176; *In re Relafen*, 231 F.R.D. at 72; *In re Lupron,* 228 F.R.D. at 93; *Celluci*, 191

F.R.D. at 8-9; *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-33 (D. Mass. 1987).[6]

In the case at bar, an examination of each of these factors demonstrates that there is a strong basis to conclude that the proposed Settlement Agreement is fair, reasonable, and adequate.

First, with respect to complexity, expense, and duration of litigation, it is clear that the continued prosecution of this case would be lengthy and expensive.   To date there is a named plaintiff, over 200 opt-in Plaintiffs to the federal action, and more than 5,000 putative class members.   If the proposed Settlement Agreement is not approved by the Court, the Parties face an extended and costly battle, first regarding conditional and class certification, and then summary judgment on the merits of whether the Clinical, Non-Exempt Employees were properly compensated.[7]

If Defendant's summary judgment motion is denied, the Parties would have to conduct expensive expert discovery and prepare for a trial that would likely be lengthy and costly. Further, if this case does not settle, it would likely take years more and result in substantial legal fees before reaching final resolution, including exhaustion of all appeals.

Second, with respect to the amount of the proposed settlement compared to the amount potentially at issue, the Parties agree that the value of the settlement is fair and reasonable given

---

[6]     Other circuits rely on similar factors when addressing the reasonableness of a settlement.  *See Williams v. Quinn,* 748 F.Supp.2d 892, 897 (N.D. Ill. 2010); *In re Lawnmower Engine Horsepower Mktg & Sales Practices Litig.,* 733 F.Supp.2d 997, 1008 (E.D. Wis. 2010); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010); *see also City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 672-73 (S.D. Fla. 2006).

[7]     Litigating Plaintiff's claims would require substantial additional preparation and discovery.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports and oppositions to such reports.  In addition, because Defendant denies that any violations of law have occurred or are occurring and given the state of the law, Defendant would possibly appeal any adverse ruling on the validity of their pay practices with respect to non-exempt employees.  In contrast, the proposed Settlement Agreement will yield a prompt, certain, and substantial recovery for members of the Settlement Classes.  Such a result will benefit the Parties, class members, and the court system.

the various challenges facing Plaintiff.  Specifically, based upon the multiple legal and factual risks continued litigation would entail, and the risk that Plaintiff and the putative class members could recover nothing if this litigation were to proceed, the Parties agree that the proposed settlement amount is entirely appropriate and very favorable to the Plaintiff and the classes she purports to represent.  *See In re Lupron Mktg. & Sales Practices Litig.,* 345 F. Supp. 2d 135, 138 (D. Mass 2004) (finding the proposed settlement warranted preliminary approval because, inter alia, "the proposed settlement amount is sufficiently within the range of reasonableness").

When the Parties agreed to explore settlement in February 2013, Plaintiff again conducted sophisticated analysis of damage and potential liability. Solomon Dec. ¶ 24.  After payroll data was provided to Plaintiff's Counsel by Defendant, Plaintiffs utilized experts to create potential damages for each employee based on Defendants' weekly payroll records.  *Id.* ¶ 25.  The $2.2 million settlement figure was reached after both Parties analyzed over a million lines of data and conducted extensive factual investigations.  *Id.* ¶ 26.  Plaintiff calculated damages on a week-by-week basis using the actual hours and pay rates for each employee during each work week. *Id. ¶* 27.  Plaintiff's counsel's extensive interviews with putative class members also allowed the number of unrecorded work time that these employees allegedly worked each work to be computed and factored into Plaintiff's damage models.  *Id. ¶* 28.

To the extent that the Parties used the same initial raw data sets to reach the Maximum Gross Settlement Amount of $2.2 million, the difference in calculation methods necessarily reflects the Parties' differing values on the fundamental aspects of this Litigation.  Obviously, the amount of unrecorded work, if any, that an employee performed each week is the greatest factor in how both Plaintiff's and Defendant's damages models compute damages.  Thus, the amount of

allegedly uncompensated work for each employee drives the calculation of unique damages for each employee.

With this extensive analysis of the potential damages of putative class members, the parties spent weeks negotiating the settlement amount, including the amount of uncompensated work that each employee would be compensated.  Considering the potential risks of continued litigation, the Parties believe that the recovery of $2.2 million, with class members receiving a *pro rata* share based on the weeks worked and hourly rate, during those weeks in which an employee performs over 40 hours in a week is a fair and reasonable settlement.

Courts including in the First Circuit routinely approve class settlements based upon a formula that takes into account the number of weeks employed and the hourly rate of that employee.  *See Woolfson v. CareGroup,* No. 09-cv-11464 (D.  Mass. June 1, 2010) (Docket No. 28) (all class members receive a *pro rata* share of settlement); *Garcia v. East Coast Cable & Commc'n, Inc.,* No. 08-cv-30009 (D. Mass. Dec. 10, 2009) (Docket No. 72) (court granting approval of settlement agreement involving state and federal wage claims distributing fund based on weeks worked); *McCandless v. Staples,* 07-cv-11850 (D. Mass. Feb. 23, 2010) (Docket No. 26) (settlement fund divided according to the number of weeks worked by each employee); *Olmeda v. AM Broadband, LLC,* No. 06-cv-30051 (D. Mass. Oct. 14, 2009) (Docket No. 141) (court approving FLSA and multi-state settlement agreement based on the number of hours worked with the assumption that each person worked, on average, the same amount of overtime hours each week); *Benoit v. Tri Wire Engineering Solutions, Inc.,* No. 07-cv-30237 (D. Mass Mar. 3, 2010) (Docket No. 85) (approving settlement agreement using a calculation based on the number of weeks worked); *see also Chemi v. Champion Mortg.,* No. 05-cv-L238, 2009 WL 1470429, at *1 (D.N.J. May 26, 2009) (approving settlement for unpaid overtime to class

members based on a formula of length of employment and regular rate of pay); *In re Wachovia Sec. LLC Wage & Hour Litig.,* No. 05-01031 (C.D. Cal. May 11, 2009) (settlement of multi-district wage and overtime action distributes fund according to number of months worked by class members); *Hens v. Clientlogic Operating Corp.,* No. 05-CV-381S, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) ("As for the distribution of settlement proceeds, this Court finds that the proposed formula, which takes into account, *inter alia,* each plaintiff's length of service during the covered time period, is equitable and reasonable."); *Black Grievance Comm. v. Phila. Elec. Co.,* No. 75-cv-3156, 1984 WL 1506, at *5 (E.D. Pa. Dec. 21, 1984) (approving settlement whereas fund was distributed to all members of the class using a formula based on number of years each performed work during relevant time period).

Further, a 2.2 million dollar settlement is significant, and within the range of a fair and reasonably recovery for the approximate 5,900 class members. *See Frattarola v. Mercy Health System of Southeastern Pa.,* No. 09-cv-05533 (E.D. Pa. (2.2 million dollar settlement for case involving hourly employees working in a hospital alleging failure to be compensated for all time worked); *Benoit v. Tri-Wire Engineering Solutions, Inc.,* No. 2007-30237 (D. Mass. 2009) ($500,000 settlement for more than 600 class members); *Johnson v. Brennan,* No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ($440,000 settlement amount represented good value for almost four hundred class members).

Here, the calculation of the Potential Settlement Payment ensures that people are treated on an individual basis and paid by the best approximation possible for such a complex issue and a large number of putative class members.

<u>Third</u>, with respect to the reaction of the putative class members to the settlement, the Court will only be able to evaluate this factor after the notice period.

<u>Fourth</u>, with respect to the stage of proceedings and the amount of discovery completed, Class Counsel conducted a sufficient investigation of the claims asserted in the Litigation as well as the recoverable damages, thus, allowing them to assess the fairness of the proposed Settlement Agreement.   Likewise, Defendant conducted an extensive internal review in order to assess potential exposure.   Also, while attending two separate mediations, the Parties submitted substantial briefs to the mediators setting forth the facts and relevant legal analysis in the Litigation and argued numerous points as to the strengths and weaknesses of their respective positions.   Further, the Parties continued these discussions throughout the more than three years of Litigation, and most recently exchanged additional information in order to perform further analysis on the claims.   The forthright nature of the mediation process and the negotiations between the Parties, as well as the views of extremely respected and experienced mediators as to those strengths and weaknesses of the Litigation focused for the Parties the legal and factual issues presented by this case.   This proposed Settlement Agreement will resolve the legal risks which the Parties fully appreciate at this point in the Litigation.

<u>Fifth</u>, with respect to the Plaintiff's likelihood of success in obtaining class certification and in recovering on the merits of the Litigation, Plaintiff recognizes that in any class litigation, class certification is a long and difficult battle.   While Plaintiff is confident the class could be certified, there are risks in every litigation.

<u>Sixth</u>, with respect to whether the proposed Settlement Agreement provides benefits which Plaintiff could not achieve through protracted litigation, the proposed Settlement Agreement provides the benefit of a prompt and fair resolution to all claims, and the avoidance of delay of the putative class members' receiving any portion of the proposed settlement amount.

Seventh, the proposed Settlement Agreement was reached as the result of good faith dealings and the absence of collusion. After the filing of the initial complaints, the Parties explored the possibility of an early resolution through a structured mediation process. Pursuant to their mediation agreement, the Parties exchanged information, including: payroll, timekeeping, and personnel documents; the total number of non-exempt employees employed by each Defendant; each non-exempt employee's dates of employment, number of hours worked, and pay rate in each workweek; written memoranda, directives, and policies directing the manner of recording of time and work hours on which Defendant intended to rely to defend against Plaintiff's claims. Solomon Dec. ¶ 7. After exchanging comprehensive settlement demands and mediation statements, the Parties met for a full day mediation with experienced mediator, Hunter Hughes. *Id.* ¶¶ 12-14. While the Parties' initial in person mediation was unsuccessful, the Parties continued negotiations. *Id.* ¶¶ 15-17. Following the dismissal of Plaintiff's State and Federal complaints, the Parties attended a second mediation with the Honorable Patrick J. King, as part of the CAMP settlement procedures. *Id.* ¶¶ 18-19. After attending this second in person mediation, the Parties were again unable to reach a resolution. *Id.* ¶ 20. After the remand of the Federal action, the Parties again began exploring resolution of the case. In February 2013, the Parties again entered into a confidentiality agreement where additional data and information would be exchanged. *Id.* ¶¶ 21-22. After experts from both Parties reviewed and analyzed the more than a million lines of data, the Parties again began settlement discussions. *Id.* ¶ 22. The Parties spent several weeks negotiating the settlement number, and agreeing to the actual terms of the settlement agreement and accompanying exhibits and memorializing the settlement terms.

Additionally, both Plaintiff and Defendant are represented by experienced and knowledgeable counsel recognized as national experts in class action wage and hour litigation,

who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients. Class Counsel has also obtained other significant court-approved settlements of class action wage and hour cases in the healthcare industry, in particular. *See* Solomon Decl. ¶ 29. Defendant's counsel routinely represents employers in complex class and collective actions, and she has successfully combated complex class action claims in the healthcare industry.

"[W]hen the Parties' attorneys are experienced and knowledgeable about the facts and their claims, their representations to the court that the settlement provides class relief which is fair, reasonable, and adequate should be given significant weight." *See Rolland*, 191 F.RD. at 10; *see also Bussie*, 50 F. Supp. 2d at 77 (placing weight on the judgment of the Parties' respective counsel, who are experienced attorneys and represented to the court that they believe the settlement provides to the class relief that is fair, reasonable and adequate); *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645, at *2 (E.D. Pa. Sept. 5, 2003) ("[I]t is appropriate to give substantial weight to the recommendations of experienced attorneys who have engaged in arms-length settlement negotiations."). As the court explained in *Lyons v. Marrud, Inc.*, No. 66-cv-415, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972), "experienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on the case."

This result is well within the reasonable standard. Here, experienced counsel for Plaintiff and Defendant, after vigorously and hotly contested settlement negotiations, have concluded that the proposed settlement is in the best interest of their respective clients. Class Counsel also

believe that the result is appropriate when considering the difficulty and risks of litigating class claims that involve the alleged uncompensated time worked by non-exempt employees under the FLSA and applicable state laws.  The opinion of experienced counsel support the conclusion that the proposed settlement here is fair and reasonable.  *See, e.g., Rolland,* 191 F.RD. at 10.

Further, not only was the proposed Settlement Agreement the result of protracted, good faith, arm's-length negotiations between experienced and informed counsel on both sides, but the proposed Settlement Agreement and its material terms were negotiated with the substantial assistance of two experienced mediators.  The Settlement is, therefore, not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the Litigation by the experienced and qualified counsel.

The proposed settlement is substantial, and will result in the potential for a meaningful settlement payment to each member of the Settlement Classes as well as Non-UMMMC Opt-in Plaintiffs.  Significantly, the amount that members of the Settlement Classes are eligible to receive will be determined based upon wages earned while working for the Defendant as a Clinical, Non-Exempt Employee during Eligible Weeks within the applicable statutory period so that fairness in payments will result.  Further, in recognizing those individuals who previously chose to opt-in to the Litigation, the Settlement Agreement provides for a minimum payment of $100.00.  Individuals who did not opt-in prior to the Settlement, but otherwise fall within the Settlement Class, will receive a minimum of a $25.00 payment.  It is important to note that these amounts are only minimums should they not be due more according to their share when calculating their pay rate and Eligible Weeks worked during the relevant time period.

This result is well within the reasonable standard.  Class Counsel also believe that the result is appropriate when considering the difficulty and risks of litigating class claims that

involve the alleged uncompensated time worked by non-exempt, clinical employees under the FLSA and applicable state laws.

Accordingly, the standards for preliminary authorization of notice of the proposed Settlement Agreement are met in this case, and the Court should grant the present Motion.

### B.    Provisional Certification of the Settlement Classes is Appropriate

Pursuant to the proposed Settlement Agreement, and in accordance with other similar wage and hour cases settled in federal courts, the Parties have stipulated, for settlement purposes only, to the following two classes:

> a.   **RULE 23 SETTLEMENT CLASS** refers to any and all non-exempt, clinical employees of Defendant in one or more of the positions indicated in Exhibit 6 to the Settlement Agreement at any time during the period dating back from three years from the entry of the Order Authorizing Notice of the Proposed Settlement and Notice of Final Fairness Hearing.

> b.   **FLSA SETTLEMENT CLASS** refers to any non-exempt, clinical employees of Defendant in one or more of the positions indicated in Exhibit 6 to the Settlement Agreement at any time during the period dating back from years from the entry of the Order Authorizing Notice of the Proposed Settlement and Notice of Final Fairness Hearing and to all Opt-in Plaintiffs.

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class.  *See, e.g., Amchem,* 521 U.S. at 591; *In re Lupron,* 345 F. Supp. 2d at 137 (citing MANUAL FOURTH); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998); *Prudential II*, 148 F.3d at 283.

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status." *Tardiff v. Knox County,* 365 F.3d 1, 5 (1st Cir. 2004); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it).  This is also the case in other circuits.  *See, e.g., Eisenberg v.*

*Gagnon,* 766 F.2d 770, 785 (3d Cir. 1985) ("[t]he interests of justice require that in a doubtful

case . . . any error, if there is to be one, should be committed in favor of allowing a class action")

(internal citation omitted).  Here, as set forth below, all the elements of Section 16(b) of the

FLSA and Rule 23 are met with respect to the proposed Settlement, which, accordingly, merits

collective class and Rule 23 class certification.

1.      The Elements of Rule 23(a) are Satisfied in the Present Case[8]

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal

Rules of Civil Procedure, a named plaintiff must establish each of the four threshold

requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative
> Parties on behalf of all only if (1) the class is so numerous that joinder of
> all members is impracticable; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the representative
> Parties are typical of the claims or defenses of the class; and (4) the
> representative Parties will fairly and adequately protect the interests of the
> class.

FED. R CIV. P. 23(a).  *See, e.g., In re M3 Power Razor*, 270 F.R.D. at 54 ("plaintiffs must

establish each of the four elements of Rule 23(a) — numerosity, commonality, typicality, and

adequacy of representation"); *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) (same); *Barnes v.*

---

[8]      The prerequisites for a conditional certification of a FLSA collective action class are recognized to be more lenient than those under Rule 23 of the Federal Rules of Civil Procedure.  *See, e.g., Poreda v. Boise Cascade, L.L.C.,* 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard which "typically results in conditional certification of the representative class") (citing to *Trezvant v. Fidelity Employer Servs. Corp.,* 434 F. Supp. 2d 40, 43 (D. Mass. 2006)); *see also Baas v. Dollar Tree Stores, Inc.,* No. C 07-03108, 2009 WL 1765759, at *5 (N.D. Cal. June 18, 2009) (recognizing that "the standard to grant conditional certification of a collective action under the FLSA is more lenient than the standard to certify a class pursuant to Rule 23 [but noting that] Plaintiffs must still demonstrate that they are 'similarly situated' to the other members of the proposed collective action"); *Burk v. Contemporary Home Srvs., Inc.,* No. C06-1459RSM, 2007 WL 2220279, at *3 (W.D. Wash. Aug. 1, 2007) (recognizing that the FLSA "sets a more lenient standard for conditional certification of a representative class than does Rule 23 of the Federal Rules of Civil Procedure [and noting that c]ollective actions are not subject to the numerosity, commonality, and typicality rules of a class action suit under Rule 23")  This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action class inasmuch as it would follow *a fortiori* from meeting the Rule 23 prerequisites.

*Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998); *Prudential II,* 148 F.3d at 308-09.  Here, all four elements are easily satisfied.

        2.     <u>Numerosity Under Rule 23(a)(1)</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Plaintiffs are not required to come before the court and detail, to the person, the exact size of the class or to demonstrate that joinder of all class members is impossible.  "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Adver. Special. Nat. Ass'n v. Fed. Trade Comm'n,* 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948)); *see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J. 1993) (stating that "[i]mpracticability does not mean impossibility" and precise enumeration of the members of a class is not necessary).  Numerosity is indisputable here as the proposed Settlement Classes consist of approximately 5,900 non-exempt, clinical employees.  Thus, for settlement purposes only, numerosity is met.

        3.     <u>Commonality Under Rule 23(a)(2)</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The commonality requirement is met if the plaintiff's grievances demonstrate "that there are common questions of law or fact in the case."  *States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.,* 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[9]  *See also In re*

---

[9]     Rather than requiring that all questions of law or fact be common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  FED. R. CIV. P. 23(b)(3).  Plaintiffs are not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)."  *In re Debon, Inc.,* 298 B.R. 206, 215 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the

*M3 Power Razor,* 270 F.R.D. at 54 ("[t]he threshold for commonality under Rule 23(a)(2) is not too high.") (internal citation omitted)

Here, commonality is met for settlement purposes insofar as the claims of the Named Plaintiff and the putative class members are all predicated on the core common issue as to whether Defendant allegedly failed to compensate them for all compensable time worked. Specifically, (a) whether non-exempt employees actually worked before or after their scheduled shifts or during their meal breaks without compensation and with the knowledge of their employer; (b) whether such time was in fact compensable time or *de minimis* and, therefore, not compensable; and (c) whether the meal period interruptions in this case rise to the level of destroying the "bona fide" meal period under the "predominant benefit" test. *See Kuznyetsov v. West Penn Allegheny Health System, Inc.,* No. 09-CV-379, 2009 WL 1515175, at *5 (W.D. Pa. June 1, 2009) court granted notice under Rule 216(b) finding all hourly employees were subject to the *same* policy that automatically deducted meal breaks for each shift worked); *Camesi v. University of Pittsburgh Med. Ctr.,* No. 09-85J, 2009 WL 1361265, at *2 (W.D. Pa. May 14, 2009) (Rule 216(b) notice granted because plaintiffs demonstrated employees injured by a common policy); *see also Kirby v. Cullinet Software, Inc.,* 116 F.R.D. 303, 306 (D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but only "illustrative" (quoting *M. Berenson Co. Inc. v. Fanueil Hall Marketplace, Inc.,* 100 F.R.D. 468, 470 (D. Mass. 1984)); *see also Ford v. Townsends of Ark., Inc.,* No. 4:08cv00509 BSM, 2010 WL 1433455, at *7-9 (E.D.

---

individual members of the putative class to Dehon's subordination strategy will be available to every other member . . . . commonality is established").

Indeed, only a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See, e.g.,* 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10; *accord So. States Police Benev. Ass'n, Inc.,* 241 F.R.D. at 87. "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a *single issue common* to all members of the class. Therefore, this requirement is easily met in most cases." *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l., Ltd.,* 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10) (emphasis added).

Ark. Apr. 9, 2010) (finding commonality because purported class members were not paid for similar pre- and post-work activities, and the common question of law was whether such activities were compensable); *Morales v. Greater Omaha Packing Co., Inc.,* 266 F.R.D. 294, 301-02 (D. Neb. 2010) (finding commonality because "[w]hether the employees are engaging in compensable pre- and post-shift activities [depends upon] non-unique general allegations that particular categories of activities are compensable, yet the defendant fails to compensate for these activities"); *Prasker v. Asia Five Eight LLC,* No. 08 Civ. 5811(MGC), 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010) (granting final approval of certification of class and class action settlement after finding the proposed class also satisfied commonality prong based on common legal issues about the way class members were compensated despite differences in positions).

This is the paradigm, in a settlement context, of a common issue sufficient to meet the 23(a)(2) standard.

### 4.    Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.[10]   The typicality requirement is satisfied when the class members' claims "arise from the same event or pattern or practice and are based on the same legal theory." *See In re M3 Power,* 270 F.R.D. at 55 (typicality was satisfied because the named plaintiffs' claims and theories of recovery were typical of the class as a whole); *see also Garcia-Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996)); *Marisol A. v. Giuliani,* 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class

---

[10]     The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen.Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. l3 (1982).  The requirement of this subdivision of the Rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *See, e.g., id.; In re Screws Antitrust Litig,* 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); *Prudential II,* 148 F.3d at 311; *In re Asbestos Sch. Litig.,* 104 F.R.D. 422, 429-30 (E.D. Pa. 1984).

member makes similar legal arguments to prove the defendant's liability").  Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories."  *In re Carbon Black Antitrust Litig.,* No. Civ.A.03-10191, 2005 WL 102966, at *12 (D. Mass. Jan. 18, 2005) (quoting *In re Linerboard Antitrust Litig.,* 203 F.R.D. 197, 207 (E.D. Pa. 2001)); *see also Hoxworth v. Blinder, Robinson & Co. Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[11]

For settlement purposes only, this requirement is also met by the Rule 23 Class Settlement which is based on the same claims.  Thus, Plaintiff's claims are "typical" with regard to the members of the Settlement Classes.  Further, this requirement is met by the proposed Rule 23 Settlement Class as Plaintiff's claims allegedly all arise from a common course of alleged conduct by Defendant in allegedly failing to compensate non-exempt employees for all time worked.  Thus, for the purpose of settlement only, Plaintiff contends that the case each member of the Rule 23 Settlement Class would put on would be essentially the same case (hence, commonality) and the named class representatives would, themselves, put on that case (hence, their claims are typical).

5.    Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative Parties will fairly and adequately protect the interests of the class."  In order to show adequate representation in the First Circuit, Plaintiff "'must show first that the interests

---

[11]    In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims."  *In re Relafen,* 231 F.R.D. at 69 (quoting *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)); *Weiss v. York Hosp.,* 745 F.2d 786, 809-10 (3d Cir. 1984).

of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *In re M3 Power Razor,* 270 F.R.D. at 55 (internal citations omitted). *See also Bouchard v. Sec'y of Health & Human Servs.,* No. Civ.A. 78-0632, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation"). These two components are designed to ensure that absentee putative class members' interests are fully pursued.

Adequacy is also met here for purposes of settlement only. Class Counsel are experienced and competent in complex litigation and have an established track record in employment law, including, specifically, the litigation and settlement of wage and hour cases in the healthcare industry. *See* Solomon Decl. ¶¶ 29-32. In turn, the Named Plaintiff has no interests antagonistic to the putative Rule 23 Settlement Class and has demonstrated her allegiance to this Litigation through her participation in the Litigation and the settlement process on behalf of all of the putative class members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiff now turns to consideration of the factors which, independently, justify certification of the Rule 23 Class under subdivision 23(b)(3) of the Rule.

6.   The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

Plaintiff's proposed Rule 23 Settlement Class also meets the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:  (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *accord In re M3 Power Razor,* 270 F.R.D. at 56.  Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues. *Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"); *In re M3 Power Razor,* 270 F.R.D. at 56*; In re Sugar Indus. Antitrust Litig.,* 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 348-49 (N.D. Ill. 1978); *see also In re TJX Cos. Retail Sec. Breach Litig.,* 246 F.R.D. 389, 398 (D. Mass. 2007) ("[N]eed for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); *Dietrich v. Bauer,* 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class").  Rule 23(b)(3) does not require that all questions of law or fact be common.  *See, e.g., Smilow,* 323 F.3d at 39 (noting out Rule 23(b)(3) "requires merely that common issues predominate") (internal citation omitted); *In re M3 Power Razor,* 270 F.R.D. at 56 ("[t]he predominance standard can be met even if some individual issues arise

common to the class."); *In re Telectronics Pacing Sys. Inc.,* 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).  In this regard, courts generally focus on the liability issues and whether these issues are common to the class.  If so, particularly in the settlement context, common questions are held to predominate over individual questions.  *See id.*

Plaintiff asserts that for settlement purposes only common questions of law and fact predominate.  All of the claims of the proposed Rule 23 Settlement Class arise out of alleged compensation practices affecting the pay of non-exempt employees.  As a result, Plaintiff alleges that putative class members all suffered the same harms (*i.e.*, uncompensated pre- or post-shift work and missed or interrupted meal breaks).  Likewise, all of the alleged harms occurred in Massachusetts, and all putative class members' claims are subject to Massachusetts and federal law.  Therefore, the proposed Rule 23 Settlement Class presents common operative facts and common questions of law which predominate over any legal or factual variations in the application of the Defendant's compensation policies to certain non-exempt, clinical employees.

These common questions of law and fact referred to above, specifically in Section IV.B.3, suffice in this proposed settlement class to present a predominance of common issues.

Plaintiff further asserts, and Defendant does not oppose for settlement purposes only, that superiority is likewise met in the settlement context because this proposed Settlement Agreement will resolve the pending Litigation against Defendant in a single, consolidated proceeding – obviating the need for multiple, parallel lawsuits.  Further, given the alleged commonality of claims relating to Defendant's compensation practices and the plethora of complex legal issues relating to the claims raised in this litigation, there would be little or no interest for each putative class member to proceed with a "single plaintiff" case.

Accordingly, Plaintiff asserts, and Defendant does not oppose strictly for the purposes of settlement only, that there is no danger that individual variations, type or magnitude of damage suffered by individual putative class members will affect predominance, as the Named Plaintiff alleges the same type of damages – and seeks the same type of relief – as all members of the proposed Settlement Classes.

Finally, resolution of the claims asserted in this Litigation in the context of a settlement is superior to the individual adjudication of the putative class members' claims for compensatory relief.  In particular, the proposed settlement provides members of the Settlement Classes with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured Parties will obtain timely relief at the conclusion of the litigation process.  Settlement also may relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, strictly in the proposed settlement posture in which the Litigation now stands, the proposed Rule 23 Settlement Class is appropriate and should be certified for settlement purposes only.

## C.    The Proposed Settlement Notice Provides Adequate Notice To The Members of the Settlement Classes

### 1.    The Proposed Settlement Notice Satisfies Due Process

The Parties propose that the Claims Administrator send, by U.S. mail, a Settlement Notice (attached as Exhibit 7 to the Settlement Agreement) and an appropriate Claim Form (substantially in the forms as attached as Exhibits 2 to 5 to the Settlement Agreement).

The Parties propose that the Settlement Notice and appropriate Claim Form be sent to all known and reasonably ascertainable members of the Settlement Classes based on Defendant's

records.  The proposed Settlement Agreement provides that the Claims Administrator will ensure that all members of the Settlement Classes are mailed the Settlement Notice and appropriate Claim Form by taking all reasonable steps to trace the addresses of any member of the Settlement Classes for whom a Settlement Notice or Claim Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches.  The Claims Administrator will then promptly re-mail the Settlement Notice and Claim Forms to members of the Settlement Classes for whom new addresses are found following this "skip trace."  *See* Settlement Agreement § VI.F.

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this Litigation, the best notice practicable. *See, e.g., Wright v. Linkus Enters., Inc.,* 259 F.R.D. 468, 475 (E.D. Cal. 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting FED. R. CIV. P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co.,* No. 08 CV 01859, 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving issuance of notice to class using same method as used here); *In re M.L. Stern Overtime Litig.,* No. 07-CV-0118-BTM, 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding same mail procedure as used here to be the "best notice practicable"); *Adams v. Inter-Con Sec. Sys., Inc.,* No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

2.      The Proposed Settlement Notice is Accurate, Informative, and Easy to Understand

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.  Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the proposed FLSA Settlement Class or opt-out of the proposed Rule 23 Class.  *See, e.g., Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 523 (1st Cir. 1991) ("the court's power to approve or reject a settlement under Rule 23(e) enables the court to ensure fairness for the class members" (quoting 3B Moore's Federal Practice ¶ 23.91 at 23-533 to 23-534)); *Prudential II,* 148 F.3d at 326-27; *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227 (9th Cir. 1996). Similarly, pursuant to Section 16(b) of the FLSA, members of the Settlement Classes are entitled to notice to afford them with an adequate opportunity to opt in to the Litigation.  *See* 29 U.S.C. § 216(b).

Here, the proposed Settlement Notice provides clear and accurate information as to the nature and principle terms of the proposed Settlement Agreement (as well as an explanation of the method of calculating the potential and final settlement payments), the procedures and deadlines for opting-in to the proposed FLSA Settlement Class or opting-out of the Rule 23 Class and submitting objections, the consequences of taking or foregoing the various options available to members of the Settlement Classes, and the date, time and place of the final settlement approval hearing.  *See* Manual Fourth § 21.312, at 294-96.

Accordingly, the proposed Settlement Notice complies with the standards of fairness, completeness, and neutrality required of such a settlement class notice disseminated under

authority of the Court.  *See, e.g.,* 4 Newberg on Class Actions at §§ 8.21, 8.39; Manual Fourth at §§ 21.311-21.312.

### D.    Claims To Be Certified

Pursuant to the Parties' proposed Settlement Agreement, the Plaintiff specifically requests that the Court certify, for settlement purposes only, the FLSA Settlement Class and Rule 23 Settlement Class, as defined in the Settlement Agreement.  *See* Settlement Agreement § II.UU.

### E.    A Final Fairness Hearing Should be Scheduled

The Court should schedule a Final Fairness Hearing to determine that final approval of the proposed Settlement Agreement is proper.  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the proposed Settlement Agreement, including the fairness, adequacy, and reasonableness of the proposed Settlement Agreement.  At that time, moreover, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h) as well as for the award of a service payment to the Named Plaintiff class representative.  Accordingly, Plaintiff requests that the Court schedule the Final Fairness Hearing approximately 135 calendar days from the date of this motion, as required by 28 U.S.C. § 1715, at the District of Massachusetts, Boston Division.

### V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter the Order Preliminarily Approving the Class Settlement, attached as <u>Exhibit B</u> hereto, which, *inter alia*:

1.    granting Plaintiff's request to file a Fourth Amended Complaint in the Litigation (attached hereto as <u>Exhibit E)</u> and granting Defendant fourteen (14) calendar days from the entry of this Order to file its Answer;

2.    asserting jurisdiction over the claims alleged, the Parties in the Litigation, and the implementation and administration of the Settlement Agreement;

3.      issuing an Order Authorizing Notice of the Proposed Settlement and Notice of Final Fairness Hearing as set forth in the Settlement Agreement (or as the same may be modified by subsequent mutual agreement of the Parties) as adequate, fair, and reasonable and in the best interests of all Plaintiff, Opt-In Plaintiffs, members of the Settlement Classes, and Non-UMMMC Opt-in Plaintiffs;

4.      preliminarily certifying pursuant to Fed. R. Civ. P. 23 and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* the Settlement Classes for purposes of settlement only;

5.      appointing Patricia Cavallaro as "Plaintiff," who together with Class Counsel, shall be authorized to act on behalf of all Plaintiff, Opt-In Plaintiffs, members of the Settlement Classes, and Non-UMMMC Opt-in Plaintiffs with respect to the Litigation and this Settlement Agreement;

6.      appointing Class Counsel as counsel for the Settlement Classes pursuant to Fed. R. Civ. Pro. 23(g);

7.      appointing Class Action Administration, Inc., as the Parties' third-party claims administrator;

8.      approving the form and content, and authorizing distribution of the Settlement Notice (Exhibit 7 to the Settlement Agreement) and Claim Forms (Exhibits 2 to 5 to the Settlement Agreement) and setting a forty-five (45) calendar day deadline for the execution and return of Claim Forms, filing of objections, or opting-out;

9.      requiring Current Employees as of the Court's entry of this Order who wish to participate in the settlement to complete the Current Employee Certification and comply with the requirements therein; and

10.     setting the hearing date for the Final Fairness Hearing.


Dated:  May 1, 2013

.

                          Respectfully submitted,

                          /s/  Patrick J. Solomon, Esq.
                          Patrick J. Solomon, Esq.
                          Jessica L. Witenko, Esq.
                          Thomas & Solomon LLP
                          Counsel for Plaintiffs
                          693 East Avenue
                          Rochester, NY 14607

Telephone:     585.272.0540
Facsimile:      585.272.0574
psolomon@theemploymentattorneys.com
jwitenko@theemploymentattorneys.com

Jody L. Newman (BBO # 542264)
COLLORA LLP
100 High Street
Boston, MA 0211-02321
jnewman@collorallp.com

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

I certify that on May 1, 2013, Plaintiff's counsel conferred with counsel for Defendant who assents to this motion.

Dated: May 1, 2013

/s/ Patrick J. Solomon
**Patrick J. Solomon**

## CERTIFICATE OF SERVICE

I hereby certify that this document, and all attachments, was filed through ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  May 1, 2013

/s/  Patrick J. Solomon
**Patrick J. Solomon**